Sills Cummis & Gross P.C.
Joseph B. Shumofsky
Linxuan Yan
One Riverfront Plaza
Newark, New Jersey 07102
(973) 643-7000

Marcus Neiman Rashbaum & Pineiro LLP
Jeffrey A. Neiman (*pro hac vice* forthcoming)
Kathryn Meyers (*pro hac vice* forthcoming)
Jason L. Mays (*pro hac vice* forthcoming)
One Financial Plaza
100 SE 3rd Ave., Suite 805
Fort Lauderdale, Florida 33394
(954) 462-1200

*Attorneys for Plaintiff Nina Agdal*

CLERK
U.S. DISTRICT COURT
DISTRICT OF NEW JERSEY
RECEIVED

2023 SEP -6 P 3:19

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| NINA AGDAL,<br><br>Plaintiff,<br><br>v.<br><br>DILLON DANIS,<br><br>Defendant. | Case No.: |

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF**
**MOTION FOR TEMPORARY RESTRAINING ORDER**

Pursuant to Federal Rule of Civil Procedure 65, Local Rule 65.1 of the District of New Jersey, 15 U.S.C. § 6851(b)(3)(A)(ii), and N.J. Stat. § 2A:58D-1(c)(4), Plaintiff Nina Agdal ("Plaintiff" or "Agdal") files this Memorandum of Law in Support of Motion for Temporary Restraining Order, in which she asks the Court to issue a temporary restraining order enjoining

1

Defendant Dillon Danis ("Defendant" or "Danis") and all persons in active concert or participation with him from (1) posting sexually explicit photographs of Plaintiff on the internet without her consent, in violation of 15 U.S.C. § 6851 (the 2022 Violence Against Women Act Reauthorization) and N.J. Stat. § 2A:58D-1, and from (2) posting content in any way depicting or portraying Plaintiff that Defendant knows or has reason to believe was never meant to be shared publicly or was obtained without consent, through the hacking of any of Plaintiff's accounts or devices, or through any other illegal or unauthorized means.

## STATEMENT OF FACTS

This action arises out of Defendant Dillon Danis's unauthorized disclosure of a nonconsensual, sexually explicit photograph of Plaintiff Nina Agdal to millions of social media users in the course of a relentless, ongoing campaign of cyber harassment and bullying against her. The pertinent facts are set forth in Plaintiff's Verified Complaint, and Plaintiff incorporates them into her Motion and supporting Memorandum by reference. *See* Verified Complaint. As set forth in the Complaint, Plaintiff is a highly successful, Danish model. *Id.* at ¶ 6. She is the fiancée of non-party Logan Paul ("Paul), a prominent social media influencer and content creator, wrestler, boxer, and entrepreneur. *Id.* at ¶ 7. In early August 2023, it was publicly announced that Paul would be squaring off in a boxing match against Defendant in October 2023. *Id.* at ¶ 12. Notwithstanding that Plaintiff has never met nor interacted with Defendant, once the fight was announced, Defendant started harassing Plaintiff on social media and in public interviews. *Id.* at ¶¶ 13–15, 23. Danis has used his social media accounts on X (formerly Twitter) and Instagram to make hundreds of crude posts about Plaintiff, most of which call or portray Plaintiff as a "whore," a "slut," or a similarly disparaging label. *Id.* at ¶ 16. Defendant's

harassment of Plaintiff has been highly publicized in the media—to date, his offensive posts about Plaintiff have been viewed on X alone more than *two billion* times. *Id.* at ¶ 37.

In the course of Defendant's harassment campaign against Plaintiff, on August 11, 2023, Defendant posted on X, without Plaintiff's authorization, a nonconsensual, sexually explicit photograph of Plaintiff that had been taken and shared without her consent during a romantic encounter with a non-party more than a decade ago. *Id.* at ¶¶ 29–31. Defendant publicly has stated he possesses additional sexually explicit photographs of Plaintiff, which he has been threatening to post on the internet, as well. *Id.* at ¶¶ 42–48.

In addition to posting online an unauthorized, sexually explicit photograph of Plaintiff, Defendant also has been harassing Plaintiff through, among other things, the publication of content that had been unlawfully obtained from Plaintiff's Snapchat account. On August 28, 2023, Defendant posted on his X account a video of Plaintiff in which she discussed her desire for intimacy during a period of celibacy. *Id.* at ¶ 25. Although Plaintiff had self-recorded that video, she never sent that private video recording to anyone, and it had been stored deep in her Snapchat archive. *Id.* at ¶ 26.

A cyber forensic investigation has revealed strong indicia that Plaintiff's Snapchat account was hacked by an unidentified third party between January and February 2022, at which time the data from Plaintiff's Snapchat account—including all photographs and videos—was downloaded. *See* Declaration of Quincy Bahler of Sourced Intelligence LLC ("Bahler Decl.") at ¶¶ 7–17; Declaration of Nina Agdal ("Agdal Decl.) at ¶¶ 7–10. A comprehensive internet search using facial recognition technology, manual and automated social media searches, and other proprietary tools did not yield any instance in which the private video had appeared on the

internet before it was posted by Defendant. Bahler Decl. at ¶ 18. The private video now has been viewed more than 135 million times. Verified Complaint at ¶ 27.

Defendant's conduct has caused Plaintiff to suffer severe emotional distress, humiliation, embarrassment, and reputational harm, for which she seeks to hold Defendant accountable in this lawsuit. *Id.* at ¶¶ 4, 56. Because Defendant's conduct threatens further imminent, irreparable harm to Plaintiff, she also seeks a temporary restraining order to prevent that harm. Specifically, Plaintiff seeks a temporary restraining order that prevents Defendant and all persons in active concert or participation with him from (1) continuing to post sexually explicit photographs of Plaintiff on the internet without her consent, and from (2) posting content in any way depicting or portraying Plaintiff that Defendant knows or has reason to believe was never meant to be shared publicly or was obtained without consent, through the hacking of Plaintiff's accounts, or through any other illegal or unauthorized means.

## **LEGAL STANDARD**

Temporary restraining orders are "stay-put" orders "designed to maintain the status quo during the course of proceedings." *Koons v. Reynolds*, 2023 WL 128882, *5 (D.N.J. Jan. 9, 2023) (citations and quotation marks omitted). The issuance of a temporary restraining order is evaluated under the same standard as a preliminary injunction. *See Interior Motives, Inc. v. Salvatore*, 2020 WL 2611517, at *2 (D.N.J. May 22, 2020). This Court should consider the following four factors: (1) the likelihood that Plaintiff will ultimately prevail in the litigation; (2) the extent to which Plaintiff is likely to suffer irreparable harm without relief; (3) whether an injunction would harm Defendant more than denying relief would harm Plaintiff; and (4) whether granting relief would serve the public interest. *See Am. Tel. & Tel. Co. v. Winback*

4

*and Conserve Program, Inc.*, 42 F.3d 1421, 1427 (3d Cir. 1994); *Opticians Ass'n of Am. V. Indep. Opticians of Am.*, 920 F.2d 187, 191–92 (3d Cir. 1990).

## ARGUMENT

This Court should grant the requested temporary restraining order because, as shown below, (i) Plaintiff has an overwhelming likelihood of success on the merits of her claims under both 15 U.S.C. § 6851 and N.J. Stat. § 2A:58D-1, (ii) there is a high likelihood she will suffer irreparable harm without relief, (iii) Defendant will not suffer any harm if this Court were to grant the temporary restraining order, and (iv) the public interest favors such relief.

### A. Plaintiff Is Likely to Succeed on the Merits of Her Claims

(1) *The 2022 Violence Against Women Act Reauthorization, 15 U.S.C. § 6851*

In order to prevail on a claim under 15 U.S.C. § 6851, Plaintiff must establish that (1) her "intimate visual depiction" was "disclosed"; (2) in or affecting interstate commerce or using a means or facility of interstate commerce; and (3) the disclosure was made without consent "by a person who knows that, or recklessly disregard[ed] whether" the disclosure was nonconsensual. *See* 15 U.S.C. § 6851(b)(1)(A).

There is an overwhelming likelihood Plaintiff will prevail on this claim. The photograph that Danis posted on his X account was an "intimate visual depiction" as defined in the statute because it was a photograph of Plaintiff, in which she was identifiable, that depicted full frontal nudity. *See* 15 U.S.C. § 6851(a)(5)(A)(i); 15 U.S.C. § 6851(a)(3). The photograph originally was taken and shared without Plaintiff's consent during a romantic encounter with a non-party more than a decade ago. Verified Complaint at ¶ 29. By posting this nonconsensual, "intimate visual depiction" to his X account, Danis "disclosed" it within the meaning of the statute because he "published" it and made it "accessible." *See* 15 U.S.C. § 6851(a)(4).

Moreover, by posting the photograph on the internet, Danis disclosed it using a means or facility of interstate commerce. *See United States v. MacEwan*, 445 F. 3d 237, 244 (3d Cir. 2006) ("[T]he transmission of photographs by means of the Internet is tantamount to moving photographs across state lines and thus constitutes transportation in interstate commerce.") (internal citations and quotation marks omitted); *United States v. Tykarsky*, 446 F.3d 458, 470 (3d Cir. 2006) (holding that the internet is both "an instrumentality and channel of interstate commerce") (citations omitted).

As for the final prong, there is no question the disclosure of the sexually explicit image (i) was made without Plaintiff's consent, and (ii) Danis knew or recklessly disregarded that the disclosure was nonconsensual. Danis has admitted to making the disclosure. Moreover, Danis did not disclose the image by accident or for any legitimate purpose, but rather he did it purposefully in the course of an ongoing campaign of cyber harassment and bullying against Plaintiff, during which Danis has made more than 250 crude and offensive posts about her. *See McCann v. McCann*, 2023 WL 4934115, *1 (D. Utah Aug. 2, 2023) ("Defendant posted the Plaintiff's private intimate images online intentionally, without consent, and with reckless disregard for Plaintiff's rights. By posting Plaintiff's private intimate images online without Plaintiff's consent, Defendant violated [the statute].").[1]

(2) *Invasion of Privacy Pursuant to N.J. § 2A:58D-1*

A claim for invasion of privacy under N.J. Stat. § 2A:58D-1, which is largely similar to a claim under 15 U.S.C. § 6851, requires Plaintiff to establish that Danis (1) "reproduced" or "disclosed" (2) an image of Plaintiff containing "exposed intimate parts", (3) "knowing that he is

---

[1] Although 15 U.S.C. § 6851(b)(4) sets forth certain exceptions to maintaining an action for relief under the statute, none of those exceptions are even arguably applicable to Defendant's conduct. *See* 15 U.S.C. § 6851(4).

6

not licensed or privileged to do so", and (4) without consent and "under circumstances in which a reasonable person would not expect to be observed." *See* N.J. Stat. § 2A:58D-1(a)-(b); N.J. Stat. § 2C:14-9.

For the same reasons discussed above with respect to Danis's violation of 15 U.S.C. § 6851, there is an overwhelming likelihood Plaintiff will prevail on this claim, as well. As noted, the photograph at issue that Defendant posted on his X account contained full frontal nudity of Plaintiff, and therefore included "exposed intimate parts" within the meaning of the statute. *See* N.J. Stat. 2C:14-1(e). By posting the nonconsensual photograph on his X account, Danis "reproduced" and "disclosed" it within the meaning of the statute because he published, disseminated, shared, and made it available via the internet. *See* N.J. Stat. 2C:14-9. Finally, Danis reproduced and disclosed the photograph knowing that he did not have Plaintiff's consent to do so and that he was not otherwise "licensed or privileged" to do so.

### B. Plaintiff Faces a Likelihood of Irreparable Harm Absent a Temporary Restraining Order

In addition to the nonconsensual, sexually explicit photograph Defendant already posted on the internet, Defendant repeatedly has claimed to possess additional sexually explicit photographs of Plaintiff and has been threatening to publish those photographs on the internet, as well. Verified Complaint at ¶¶ 42–48.

On August 20, 2023, Danis posted on X that he possessed a picture of Plaintiff that was "like a nuclear bomb; the damage it would do would be *irreparable*." Declaration of Jeffrey A. Neiman, Esq. ("Neiman Decl.") at ¶ 5 and Ex. A (emphasis added). Danis said, if he posted the picture, it would "end the fight, end [Paul's] engagement [to Plaintiff], and [he] might even find [himself] in jail." *Id.* at ¶ 6 and Ex. B. Yet, despite his recognition of the illegal nature of

posting the picture, in a post two days later, on August 22, 2023, Danis said, "if we hit 2 million on my instagram I'll drop the picture." *Id.* at ¶ 7 and Ex. C.

On August 27, 2023, Danis posted on X, "I just got another absolute nuke of a pic of [Plaintiff] this one might be worse than the other one wow this girl is actually wild. Logan on a man level you need to call this marriage off now." *Id.* at ¶ 8 and Ex. D. In another post that day, again acknowledging the illegal nature of his conduct, Danis said that if he posts the pictures, "the fight will be called off and I'll be sued." *Id.* at ¶ 9 and Ex. E. The next day, on August 28, 2023, in an X post, Danis wrote: "Like this if I should schedule the pic to be posted on my walk to the ring?" *Id.* at ¶ 10 and Ex. F. Then on September 2, 2023, in yet another X post continuing his threats, he wrote: "These are so bad, I would definitely get sued, go to jail, and be [sic] fight would be off. *But I might just say fuck it.*" *Id.* at ¶ 11 and Ex. G (emphasis added).

The threat of Danis posting additional sexually explicit photographs of Plaintiff on the internet without her consent is underscored by the fact that he already has been sharing them with others. For example, on August 20, 2023, a former professional kickboxer named Andrew Tate responded to one of Danis's posts on X, noting that Danis had sent him one of the pictures. *Id.* at ¶ 12 and Ex. H. As another example, on September 3, 2023, Danis joined popular live streamer Adin Ross on a live stream, during which Danis purported to show Ross one of the pictures.[2] The live stream featured Ross's reaction to being shown one of the pictures, and Defendant questioned Ross as to whether he should release the pictures publicly and the potential consequences of doing so.

---

[2] *See* Adin Live, "Adin Ross Reacts to Dillon Danis's Worst Picture of Logan Paul's Fiance," at https://www.youtube.com/watch?v=UXi4sL63BUs. Defendant shows Ross the picture at 1:45 into the video.

Once Danis follows through on his continued threats to post additional sexually explicit photographs of Plaintiff on the internet for millions of social media users to see, it will be impossible to undo that damage—what is seen cannot be unseen, nor can the photographs ever be completely or effectively clawed back from the public sphere. Plaintiff would suffer irreparable harm in the form of further emotional distress, reputational harm, humiliation, and embarrassment. *See Doe v. Spencer*, 2023 WL 1484924, *2-3 (M.D. Tenn. Feb. 2, 2023) (granting extension of TRO and finding, in relevant part, plaintiff would be irreparably harmed if defendant continued to distribute intimate pictures of him without consent). For similar reasons, Plaintiff faces a likelihood of irreparable harm from Danis continuing to post content in any way depicting or portraying Plaintiff that Danis knows or has reason to believe was never meant to be shared publicly or was obtained without consent, through the hacking of any of Plaintiff's accounts or devices, or through any other illegal or unauthorized means.

**C. Danis Will Not Suffer Any Harm Under a Temporary Restraining Order**

Although Plaintiff faces a likelihood of irreparable harm, the same is not true of Danis. In fact, in the event this Court issues a temporary restraining order, Defendant would not suffer *any* harm. Danis never has had any legitimate reason to be posting this content in the first place, the sole purpose of which has been to harass Plaintiff. While Danis allegedly has engaged in this conduct as part of the promotion for his fight scheduled with Plaintiff's fiancé (Verified Complaint at ¶¶ 34, 54), the subject of Danis's illegal conduct is Plaintiff, not Plaintiff's fiancé.[3] Accordingly, the balance of equities weighs heavily in favor of granting the temporary restraining order. *See Spencer*, 2023 WL 1484924, at *3 ("[T]he potential harm to Plaintiff of

---

[3] Regardless, promotion of a fight does not permit or otherwise justify the posting of an intimate, private image of an individual without his or her consent.

9

additional distribution of his intimate images is great. Defendant, on the other hand, will not be harmed by being prohibited from disseminating intimate images of Plaintiff.").

### D. A Temporary Restraining Order Is in the Public Interest

"As a practical matter, if a plaintiff demonstrates a likelihood of success on the merits and irreparable injury, it almost always will be the case that the public interest will favor the plaintiff." *AT&T v. Winback & Conserve Program*, 42 F.3d 1421, 1427 n.9 (3d Cir. 1994). That is the case here, as well. "[I]t is in the public interest to preclude Defendant from further nonconsensual dissemination of Plaintiff's intimate photos." *Spencer*, 2023 WL 1484924, at *3. After all, there is no public interest in permitting Danis to post nonconsensual, sexually explicit photographs of Plaintiff, as part of some disgusting, injudicious, and indiscreet effort to promote his fight with an entirely different person.

## CONCLUSION

WHEREFORE, for the foregoing reasons, Plaintiff Nina Agdal requests that this Court grant her Motion for a Temporary Restraining Order and issue a temporary restraining order enjoining Defendant Dillon Danis and all persons in active concert or participation with him from (1) posting sexually explicit photographs of Plaintiff on the internet without her consent, in violation of 15 U.S.C. § 6851 (the 2022 Violence Against Women Act Reauthorization) and N.J. Stat. § 2A:58D-1, and (2) posting content in any way depicting or portraying Plaintiff that Defendant knows or has reason to believe was never meant to be shared publicly or was obtained without consent, through the hacking of any of Plaintiff's accounts or devices, or through any other illegal or unauthorized means.

Dated: September 6, 2023

Respectfully submitted,

**SILLS CUMMINS & GROSS P.C.**

*/s/ Joseph B. Shumofsky*

**Joseph B. Shumofsky**
New Jersey Bar No. 045211998
jshumofsky@sillscummis.com
**Linxuan Yan**
New Jersey Bar No. 401192022
lyan@sillscummis.com

One Riverfront Plaza
Newark, NJ 07102
Telephone: (973) 643-7000
Facsimile: (973) 643-6500

**MARCUS NEIMAN RASHBAUM & PINEIRO LLP**

*/s/ Jeffrey A. Neiman*

**Jeffrey A. Neiman**
Florida Bar. No. 544469
jneiman@mnrlawfirm.com
*Pro Hac Vice Admission Forthcoming*
**Kathryn Meyers**
Florida Bar No. 711152
kmeyers@mnrlawfirm.com
*Pro Hac Vice Admission Forthcoming*
**Jason L. Mays**
Florida Bar. No. 106495
jmays@mnrlawfirm.com
*Pro Hac Vice Admission Forthcoming*

100 Southeast Third Avenue
Suite 805
Fort Lauderdale, FL 33394
Telephone: (954) 462-1200
Facsimile: (954) 688-2492

*Counsel for Plaintiff Nina Agdal*