```
                    UNITED STATES DISTRICT COURT
                       DISTRICT OF NEW JERSEY

NINA AGDAL,                          .
                                     .
        Plaintiff,                   .
                                     . Case No. 23-cv-16873
vs.                                  .
                                     . Newark, New Jersey
DILLON DANIS,                        . February 9, 2024
                                     .
        Defendant.                   .
                                     .


                       TRANSCRIPT OF HEARING
              BEFORE THE HONORABLE MICHAEL A. HAMMER
                 UNITED STATES MAGISTRATE JUDGE


APPEARANCES (the parties appeared via teleconference):

For the Plaintiff:      JOSEPH BRUCE SHUMOFSKY, ESQ.
                        Sills Cummis & Gross P.C.
                        One Riverfront Plaza
                        Newark, NJ 07102
                        (973) 643-5382
                        jshumofsky@sillscummis.com

                        JEFFREY NEIMAN, ESQ.
                        MNR Law Firm
                        One Financial Plaza
                        100 Southeast Third Ave, Suite 805
                        Ft. Lauderdale, Florida 33394
                        (954) 462-1200
                        jneiman@mnrlawfirm.com




Audio Operator:

Transcription Service:  KING TRANSCRIPTION SERVICES, LLC
                        3 South Corporate Drive, Suite 203
                        Riverdale, NJ  07457
                        (973) 237-6080

Proceedings recorded by electronic sound recording; transcript
produced by transcription service.
```

```
 1   (APPEARANCES continued)

 2   For the Plaintiff:      JASON L. MAYS, ESQ.
                             MNR Law Firm
 3                           One Biscayne Tower
                             2 South Biscayne Blvd, Suite 2530
 4                           Miami, Florida 3313-1000
                             (305) 434-4941
 5                           jmays@mnrlawfirm.com

 6
     For the Defendant:      KELLY A. ZAMPINO, ESQ.
 7                           Hartmann Doherty Rosa Berman &
                             Bulbulia, LLC
 8                           433 Hackensack Avenue, Suite 1002
                             Hackensack, NJ 07601
 9                           (201) 441-9056
                             kzampino@hdrbb.com
10

11   For the Interested      JAMES J. WARD, IV, ESQ.
     Party Joshua            Actuate Law
12   Wander:                 641 W. Lake Street, 5th Floor
                             Chicago, IL 60661
13                           (305) 302-6909
                             james.ward@actuatelaw.com
14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1                   (Commencement of proceedings)
 2
 3            THE COURT:  All right.  Good afternoon, everyone.
 4   This is Judge Hammer.  We are on the record in Agdal versus
 5   Davis [sic].
 6            Can I have appearances, please, beginning with
 7   plaintiff's counsel.
 8            MR. SHUMOFSKY:  Good afternoon, Judge Hammer.  This
 9   is Joseph Shumofsky from Sills Cummis & Gross on behalf of
10   plaintiff Nina Agdal.  Also on the line are my co-counsel,
11   Jeff Neiman and Jason Mays.
12            THE COURT:  All right.  Thank you.
13            And how about -- how about for the defense?
14            MS. ZAMPINO:  Good afternoon, Your Honor.  Kelly
15   Zampino of Hartmann Doherty on behalf of the defendant.
16            THE COURT:  All right.
17            And then do we have counsel for Mr. Wander?
18            MR. WARD:  Yes, Your Honor.  This is James Ward
19   from Actuate Law on behalf of nonparty Mr. Wander.
20            THE COURT:  Okay.
21            And, obviously, the reason we're on the record is
22   because of, first, Mr. Ward's December 28th, letter, Docket
23   Entry 35.  And then, although the parties did not file it on
24   the docket, the February 2nd joint status report that the
25   parties submitted in response to the Court's February 6th,
```

```
 1  2024, order -- strike that.  Sorry -- January 4, 2024, order,
 2  Docket Entry 36.
 3          So let me ask just at the outset, where is
 4  Mr. Wander located?
 5          MR. WARD:  Your Honor, this is James Ward.
 6          Mr. Wander is largely located in South Florida.
 7  But he travels quite a bit and extensively travels in Europe
 8  because of business interests specifically in the UK.
 9          THE COURT:  Right.  But where is his residence?
10          MR. WARD:  Oh, Florida.
11          THE COURT:  -- his residence --
12          MR. WARD:  Florida.
13          THE COURT:  So how -- let me ask this to both
14  plaintiff's counsel and Mr. Ward:  How is this in front of
15  me?  Compliance would not be in the District of New Jersey;
16  so under Rule 45, I think you would go to the district where
17  compliance is required.  No?
18          MR. WARD:  Your Honor, our --
19      (Simultaneous conversation)
20          THE COURT:  -- under Rule 45, I have no -- I have
21  no jurisdiction over Mr. Wander.  Unless you disagree with my
22  reading of Rule 45, of course.
23          MR. WARD:  No.  Not at all, Your Honor.  But this
24  is sort of a Catch-22 situation where an order to file a
25  motion to quash, we would still need to follow the individual
```

```
 1  rules -- or individual rules and the local rules for the
 2  district and communicate with the Court first.
 3          THE COURT:  Well, I am not so sure of that,
 4  because, right now -- hold on -- let's go back -- because
 5  it's really -- yeah, untimely motion.  This is
 6  Rule 45(d)(3)(A):  Untimely motion, the court for the
 7  district where compliance is required must quash or modify a
 8  subpoena that -- et cetera, et cetera, et cetera.
 9          So, again, it strikes me that either the
10  plaintiff -- it's incumbent on either the plaintiff to move
11  to enforce the subpoena, or, if Mr. Wander wants to make the
12  motion to quash -- but at least as I read that rule, the
13  motion would have to be --
14          Now, that judge could, under Rule 45(f) transfer
15  the motion back here, and I'd be fine with that, since it is,
16  you know -- as far as magistrate judges go -- my case.
17          But I don't know that how I can override Rule 45.
18  And, really, then, absent that transfer under Rule 45(f), I
19  don't know how, even if I were to rule for plaintiff -- and I
20  am not saying that I would -- I would have jurisdiction over
21  Mr. Wander -- decided not to show up.  --
22     (Simultaneous conversation)
23          THE COURT:  -- can I propose a different solution
24  to cut through all of this?  And I'm just thinking this
25  through.
```

```
 1                 MR. WARD:  Of course.
 2                 THE COURT:  -- look, here's the issue plaintiff
 3     has, and quite honestly, your part of the February 2nd letter
 4     was conspicuously absent on this explanation.  If one assumes
 5     that there's not going to be a fight as to the authenticity
 6     of the posted photo -- and understand that in preparation for
 7     today, I went back through the complaint, line by line to
 8     make sure I understood exactly the relevance of the photo.
 9     And the -- the -- all of the other paragraphs in the
10     complaint, frankly, the operative one, at least for the
11     revenge porn statute and 15 U.S.C. § 6851 -- and, frankly,
12     for that matter, invasion of privacy, is what happens on
13     August 11th, 2023 -- right? -- when Mr. Davis [sic] posted on
14     Twitter the sexually explicit photo of Ms. Agdal without her
15     consent.
16                 If there's -- I could understand the need for
17     limited testimony by Mr. Wander to authenticate that photo,
18     if authentication of the photo were an issue.
19                 Now, that's not to say Ms. Agdal herself couldn't
20     authenticate it.
21                 But if authentication is not an issue, I have to be
22     honest, I'm struggling to see the relevance of Wander's
23     testimony.  Him sharing it isn't really the issue; right?  If
24     you've already -- and this is the predicate for my thinking
25     is, authenticity is not in issue.  If authenticity's in
```

1   issue, then it's much more likely than not that Mr. Wander's
2   testimony is relevant, at least on the providence of the
3   photo -- it's real, was taken of Ms. Agdal, et cetera,
4   et cetera.
5           But if it's not, who Mr. Wander may have shared it,
6   I'm struggling to see the relevance of that, because the only
7   thing the chain of custody would be relevant for would be
8   authenticity.
9           The big issue, of course, is that Mr. Davis [sic]
10  is alleged to have posted it on X.  And similarly -- and,
11  again, look, you know, the fact that Mr. Wander took the
12  photo, which seems to be not in dispute because he assigned
13  the rights to it over to Ms. Agdal, the fact that he could --
14  I am not condoning that for a minute.  It's terrible.  You
15  know, somehow it got shared.  I know he denies that.
16          But whether he took it or the fact that he took it
17  without Ms. Agdal's consent, I am not sure that I understand
18  the relevance of that, because the issue, again, is that
19  Mr. Davis [sic] posted it on X.  And otherwise I'm struggling
20  to understand -- and, again, the plaintiffs don't give me a
21  whole lot in the letter.  I'm struggling to understand the
22  relevance.
23          And, frankly, even if you wanted to drill down on
24  sort of how Mr. Davis got it, obviously, you can pose
25  interrogatories to Mr. Davis and depose him.

1          So I'm just wondering if there's a more efficient
2   way that doesn't send this -- you folks down to the Southern
3   District of Florida and threaten to hold this case up in
4   terms of discovery for a couple of months while that all gets
5   sorted out, that's far more efficient.
6          So those are my thoughts.  And I just put them out
7   there for consideration.  I'm certainly happy to talk about
8   them.
9          MR. NEIMAN:  Your Honor, this is Jeff Neiman on
10  behalf of Ms. Agdal.
11         And, look, we appreciate trying to cut through it.
12         I think part of the issue is that Mr. Wander and
13  the circumstances around the photo, Ms. Agdal ever consented
14  at all to it being taken and its distribution, I think is at
15  play in this case because Mr. Danis is certainly going to try
16  to argue, at least potentially argue and is alluding to in
17  some of his back-and-forth during discovery, that Ms. Agdal
18  kind of put this image herself out there on the internet.
19  And if she put that image out there on the internet herself,
20  then he's just reproducing what in essence is an
21  already-produced image and, therefore, he's not liable.
22         So we do think that the circumstances of this photo
23  and how it was taken and why it was taken and when it was
24  taken and what he did with it at least have some bearing that
25  it may lead to additional discoverable information that could

1  be used at trial at some point, as we continue, quite
2  frankly, to understand the circumstances around this.  We
3  have a -- account that was hacked.  We have a lot of other
4  stuff that's been going on here that we're trying to
5  understand.
6           And, clearly, the source of this photo and how it
7  originated and where it went at least gives us a basis to
8  start kind of understanding where we could begin to look
9  through discovery and within the means of this case, for
10 sure --
11          (Simultaneous conversation)
12          MR. WARD:  Yeah, so I think, once again, we're in
13 the Catch-22 land where we filed our letter with you in an
14 effort to, you know, lay the groundwork for the variety of
15 objections that we make.  And I don't want to preview too
16 much, but I think your points in -- all of the tests to
17 determine whether or not a nonparty deposition makes sense
18 basically boil down to the relative probity of the potential
19 materials, the freshness or staleness of the potential
20 materials, and whether or not they're going to actually lead
21 to, you know, moving the ball forward in the litigation.
22          And, here, the circumstances surrounding a photo
23 that was taken 10 years ago are not going to have any impact
24 on the litigation over what happened in the fall of 2023.
25          So I think, you know, your -- I think your points

1  are well taken, Your Honor, and, you know, match quite
2  closely with some of our thinking on this.
3           So the idea that, you know, yes, we want to
4  understand the origin of this photo, but, again, if that the
5  authenticity of the photo and the fact that Mr. Wander
6  assigned it to the plaintiff aren't really at issue, it's
7  very hard to see what Mr. Wander's saying, "I have no idea
8  how this photo came into anyone else's possession," which is
9  all that he would say, is going to be useful or the
10 circumstances of the photo, you know, whether -- how they
11 were taken or where has no effect on whether or not Mr. Danis
12 was entitled to distribute them on X.
13          So we track your views on this, Your Honor.  And I
14 think, you know, irrespective of the jurisdictional issues,
15 that's largely what our position is.
16          THE COURT:  Well, but -- but Mr. Neiman makes a
17 fair point, which is that under the statute, under 6851, the
18 term "publish" has a -- or "disclose," rather, is defined as
19 to transfer, publish, distribute, or make accessible.
20          Wouldn't that, then, at least make (A) whether
21 Ms. Agdal ever consented to it relevant vis-à-vis Mr. Wander?
22 And I understand it was 10 years -- the photo was taken more
23 10 years ago, but either she consented to him taking it and
24 more specifically consented to him sharing it or not.
25          Now, while I appreciate your representation that he

1  did not just share it with anybody, surely you can understand

2  why plaintiff would want some more testimony on that issue if

3  part of Mr. Davis's [sic] defense here is she had already

4  consented to it being shared and, therefore, it couldn't be a

5  violation of the revenge porn statute or the -- or 6851.

6             MR. WARD:  Well, so, I don't know, Your Honor,

7  necessarily that I -- under the publication prong, perhaps.

8             But there's no question that the circulation prong

9  is a separate matter.  And I don't think there's any dispute

10 that, you know, the plaintiff clearly disputes that she

11 consented to circulation as performed by Mr. Danis.

12            And so whether or not there was an initial consent

13 to Mr. Wander 10 years ago for the sharing of the photo

14 and -- you know, really that's sort of stretching things,

15 even on its own, that doesn't have any bearing on the central

16 component of this case, which is whether or not this

17 circulation was itself consented to.

18            The nonconsensual determination is about this

19 particular distribution, not any prior distribution in the

20 chain.  It's not like -- you know, it's not like a licensing

21 agreement.

22            THE COURT:  Let me ask Ms. Zampino.

23            First, is Mr. Davis going to contest the

24 authenticity of the photo?

25            MS. ZAMPINO:  No.

1          THE COURT: Okay.

2          And I'm not trying to put you on the spot or have

3   you prematurely disclose litigation strategy; so if you can't

4   answer my next question, I completely understand.

5          If plaintiff's counsel correct, is he going to --

6   or possibly going to argue consent by Ms. Agdal?

7          MS. ZAMPINO: I think it's fair to say that that is

8   something that we're considering. I can't give you a

9   definitive answer, but, certainly, our affirmative defenses

10  that have been pled is that he did not know she did not

11  consent to the disclosure of the picture --

12     (Simultaneous conversation)

13         MS. ZAMPINO: And in light of the other publication

14  of her, he had no reason to know that she did not consent to

15  the disclosure.

16         MR. NEIMAN: Your Honor, this is Jeff Neiman. And

17  that's -- in their discovery requests, the defendants'

18  discovery requests, that's clearly where they're going, which

19  they're trying to ask whether -- what other circumstances in

20  which photos were taken of our client?

21         And, by the way, just so you know, Mr. Wander

22  previously had admitted to Ms. Agdal that he apologized for

23  disseminating the photo, and he knew he did it without her

24  consent. So there's a factual dispute here too, which I

25  think is kind of very important and at the heart of kind of

1  where I think Mr. Danis is going to go in his argument, which
2  is to portray Ms. Agdal as someone who just put herself on
3  the internet and did whatever -- and Mr. Danis published
4  accordingly, and that's -- that's a real defense that we need
5  to be able to defeat, and I think we will be able to defeat,
6  but we need -- to get the discovery in order to defeat it.
7           THE COURT: Right.
8           Well --
9           MR. NEIMAN: And I am not also -- I am not going to
10 go on -- this doesn't need to be an eight-hour deposition.
11 It's going to be a very --
12          THE COURT: Oh, no, it would never be --
13     (Simultaneous conversation)
14          THE COURT: At least, if I have anything to say, it
15 would be three, at tops.
16          MR. NEIMAN: Which would be fine, Your Honor.
17 Like -- we want to keep it narrow. I provided an affidavit
18 to Mr. Wander, asked him to sign it, which is consistent with
19 facts that he had relayed to me on a telephone call, and then
20 he refused to sign that affidavit, which led us to have to go
21 down this path --
22          THE COURT: I saw that in the letter.
23          MR. NEIMAN: So our --
24          MR. WARD: So I just -- well, I'm sorry,
25 Mr. Neiman. Please finish.

1          MR. NEIMAN:  No, Your Honor, our hands are tied.
2    That's all I can say.
3          MR. WARD:  So, again, Your Honor, I'm -- I am
4    not -- I don't want to telegraph too much, but I think there
5    is a factual dispute, certainly, as to the nature of the
6    circumstances surrounding the photo, that there are
7    discrepancies in the affidavit that we received.  You know,
8    there's -- this is not a clean-cut story of, you know,
9    Mr. Wander said one thing and then all of a sudden it's
10   changed.  His position has been consistent from the
11   beginning.  But that's neither here nor there for the
12   fundamental question, which is whether or -- you know,
13   irrespective of the plaintiff's contention that, you know,
14   there were other photos that had been disseminated and so,
15   therefore, you know, somehow Ms. Agdal was acting in
16   conformity therewith, here the only question is, you know,
17   we've authenticated the photograph.  No one's disputing the
18   authenticity of the photograph.  The fact of its or -- the
19   inception of the photograph and whether or not it was a
20   consensual photograph or not doesn't change the fact that
21   Mr. Danis would need to be able to prove that his
22   dissemination of this particular photograph was consensual,
23   not whether he had received it from someone else who had
24   received consent.
25          So it does --

1          (Simultaneous conversation)

2              THE COURT:  As to liability, you might be right.
3    As to liability, you might be right.

4              As to damages, I'm not so sure because -- because
5    even if she had previously -- and I understand your argument,
6    it's iterative.  It's not -- you can't give consent across
7    the board.  Right?

8              But it's one thing -- and, look, I don't know the
9    whole other background context of whether there are other
10   photos that Ms. Agdal shared herself -- I don't know.  But
11   that's not before me.

12             But it could be probative of damages.

13             Look, it seems to me here are the options.  Okay?
14   One is go litigate this in Southern District of Florida -- or
15   probably, I guess, Southern District of Florida, whatever the
16   appropriate district is, where compliance would take place.
17   Two is the parties agree to a very narrow -- if you can't
18   agree on the affidavit, certainly, then, I can understand
19   that for -- where Mr. Wander stands, he's never going to sign
20   an affidavit if he doesn't -- if he's not satisfied or
21   comfortable that each statement in the affidavit is true.
22   But then would leave, quite possibly, a limited deposition,
23   you know, two, three hours, limited to specifically what
24   we've discussed today in terms of, as you said, inception and
25   that consent.  On distribution.

1        So, Mr. Ward, you're the one with client whose
2   compliance or not would take place in Florida -- handle it?
3        MR. WARD:  Yes, Your Honor, I'll go back and speak
4   to the client.  I think now that we're comfortable that this
5   is not a matter that does need to be before Your Honor, we'll
6   move it down to home turf in Florida, and then we'll also
7   speak, per your suggestion, with counsel for the plaintiff
8   about next steps as well.
9        MR. NEIMAN:  Your Honor, this is Jeff Neiman.
10       Our just -- our concern is we have fact discovery
11  deadline middle of April.  We're obviously moving on multiple
12  fronts, and we want to push as fast as we can on this.  So
13  we'll follow up with Mr. Wander and hopefully have an answer
14  from him, if we can come to an agreement fairly quickly.  If
15  not, we'll either move to compel or they'll move to quash
16  expeditiously.
17       THE COURT:  Yeah.  And, look, for my part, we
18  certainly haven't previously extended the pretrial scheduling
19  order.  I trust that you folks will meet and confer, figure
20  out what the game plan's going to be.  And then if it needs
21  to be a fight in Florida -- like I said, by the way, one of
22  the options, as I'm sure the Southern District of Florida
23  judge or the appropriate District of Florida judge will
24  appreciate, under Rule 45, if they want to send it back here,
25  that's fine.

1           But in any event, as long as I see, you know, a --
2  when did we do the -- was it today?  Or is that just -- --
3  okay.  So we'll push out.  Here's what we'll do.
4           We'll push out a date to speak again in early
5  April, in my case.  Okay?  So this doesn't necessarily
6  include you, Mr. Ward.  This is just for the parties in the
7  case.
8           If the issue's not resolved in the sense of the
9  parties have worked out an agreement, then what I would
10 certainly expect to see by then, plaintiff's counsel, would
11 be the fact that whether it's by virtue of you filing a
12 motion to enforce or Mr. Wander filing a motion to quash,
13 that the litigation is actually occurring in front of -- in
14 Florida.
15          And then if at that point, obviously, we need to
16 tweak the fact discovery deadlines, I'll certainly
17 understand.  I'm certainly not going to hold against you that
18 you have this, you know, discovery issue still pending in a
19 different court.  I would understand, then.  As long as
20 plaintiff has moved with due haste by then, that we would
21 need to extend out the April 19th deadline.  Okay?
22          MR. NEIMAN:  We appreciate it, Your Honor.
23          THE COURT:  Okay.  All right.
24          Well, Mr. Ward, thank you for appearing today.
25          And once the parties have determined what's going

```
 1  to happen, just for my own benefit, I would appreciate a
 2  heads-up.
 3          So can I ask plaintiff's counsel to shoot me a
 4  letter?
 5          MR. NEIMAN:  No problem, Your Honor.
 6          THE COURT:  All right.
 7          All right.  Thank you, everybody.  We're adjourned.
 8  Have a good afternoon.
 9                  (Conclusion of proceedings)
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

1 | Certification

2 |    I, SARA L. KERN, Transcriptionist, do hereby certify
3 | that the 19 pages contained herein constitute a full, true,
4 | and accurate transcript from the official electronic
5 | recording of the proceedings had in the above-entitled
6 | matter; that research was performed on the spelling of proper
7 | names and utilizing the information provided, but that in
8 | many cases the spellings were educated guesses; that the
9 | transcript was prepared by me or under my direction and was
10 | done to the best of my skill and ability.
11 |    I further certify that I am in no way related to any of
12 | the parties hereto nor am I in any way interested in the
13 | outcome hereof.

18 | s/ *Sara L. Kern*     21st of February, 2024
19 | Signature of Approved Transcriber     Date

Sara L. Kern, CET**D-338
King Transcription Services, LLC
3 South Corporate Drive, Suite 203
Riverdale, NJ  07457
(973) 237-6080