# Sills Cummis & Gross
### A Professional Corporation

**The Legal Center**
**One Riverfront Plaza**
**Newark, New Jersey 07102**
**Tel: (973) 643-7000**
**Fax (973) 643-6500**

101 Park Avenue
28th Floor
New York, NY 10178
Tel: (212) 643-7000
Fax: (212) 643-6500

**Joseph B. Shumofsky**
**Member**
**Admitted In NJ, NY**
**Direct Dial: 973-643-5382**
**Email:**
**jshumofsky@sillscummis.com**

222 Lakeview Avenue, Suite 800
West Palm Beach, FL 33401
Tel: (561)-693-0440
Fax: (561)-828-0142

July 10, 2024

**VIA ECF**
Honorable Michael A. Hammer
United States District Court
Martin Luther King Building & U.S. Courthouse
50 Walnut Street
Newark, NJ 07101

**RE:** *Nina Agdal v. Dillon Danis*, 23-CV-16873-MCA-MAH

Dear Judge Hammer,

      We represent Plaintiff Nina Agdal in the above-referenced matter. We submit this status letter in advance of the hearing scheduled for July 11, 2024, at 10:00 a.m., on the Court's Order to Show Cause [D.E. 57], at which Defendant Dillon Danis was ordered to appear in person and show cause why sanctions should not be imposed for his failure to fulfill his discovery obligations. This letter is to update this Court on the status of Plaintiff's unsuccessful efforts to obtain long-overdue discovery from Defendant,[1] even after this Court entered the Order to Show Cause, and also to update this Court on other discovery-related matters.

---

[1] The specific discovery requests at issue and Plaintiff's efforts to obtain the discovery prior to the Order to Show Cause were detailed in Plaintiff's letter motion dated May 31, 2024, *see* D.E. 56, and more generally in Plaintiff's status letter dated May 30, 2024, *see* D.E. 55.

12474783.v1

Sills Cummis & Gross
A Professional Corporation

Honorable Michael A. Hammer
July 10, 2024
Page 2

### A. Defendant's Ongoing Discovery Deficiencies

*(i) X materials*

As an initial matter, Defendant carried out most of the offending conduct at issue in this case via X, as X is the platform on which he posted the nonconsensual explicit photograph of Plaintiff and also where he posted his allegedly defamatory claims that Plaintiff has HIV. With regard to any responsive materials in Defendant's possession *that are maintained on X* – including any responsive messages he sent or received on that platform – Defendant still owes Plaintiff this discovery.

During the Parties' conferrals between February and May 2024, Defendant's counsel represented that Defendant did not provide responsive materials to him and technological issues prevented defense counsel from accessing and downloading responsive materials directly from Defendant's X accounts. As an attempted workaround, the Parties agreed that defense counsel would request from X a copy of the archived data associated with Defendant's accounts. It was the Parties' understanding this would include all messages sent or received from the accounts and a wealth of other data relating to Defendant's activities on the platform. Upon receiving that download from X, Defendant's counsel produced it to Plaintiff wholesale on June 11, 2024.

Plaintiff quickly realized, however, that – in addition to the production being an extraordinarily large and cumbersome data dump – the format of the X archived data renders it virtually unintelligible and unusable. The direct messages alone appear to comprise more than 100,000 pages, and Plaintiff's discovery vendor advised that, because of its format, it is impossible to cull and/or organize the information in any useful way (*e.g.,* by date). Moreover, because of its format, the data omits much of the key information sought in discovery.[2]

We raised these format-related issues with Defendant's counsel on June 14, 2024, and followed up again on July 3, 2024, after we did not hear back. On July 8, 2024, Defendant's counsel contacted X for assistance in obtaining the data in a different format. It is Defendant's responsibility to produce any responsive X data in a usable format, and not as a data dump that "shift[s] the burden" of his discovery obligations to Plaintiff. *See Sports Garten LLC v. Sunday Night Prods.*, 2023 U.S. Dist. LEXIS 237085, *7 (E.D.N.Y. Aug. 25, 2023) ("[W]hen documents were finally turned over, Plaintiff engaged in an impermissible document dump of approximately 40,000 files. . . . As discussed previously, Plaintiff cannot unilaterally shift the burden of its discovery obligations onto Defendant in such a manner."). Based on our own communications with X, it is our understanding that there is a reasonable and straightforward means for X users

---

[2] As an example, the messages do not identify who Defendant was communicating with other than by a unique, X-assigned user identification number.

12474783.v1

Sills Cummis & Gross
A Professional Corporation

Honorable Michael A. Hammer
July 10, 2024
Page 3

like Defendant to obtain their own account data in a more user-friendly format, and Plaintiff hopes and expects Defendant to assist his counsel to facilitate obtaining that download expeditiously.

### *(ii) All other document discovery from Defendant*

Separate from the X-related data, and more relevant to the Show Cause hearing, a significant portion of Plaintiff's document requests to Defendant seek his contemporaneous communications about his offending social media activities. Plaintiff's discovery was propounded nine months ago, in November 2023. In May 2023, Defendant produced a limited set of data that had been downloaded from his Instagram account. Then, earlier this week, Defendant produced a **single** WhatsApp communication thread – a thread between Defendant and his manager, which his manager already had produced in this case pursuant to a non-party subpoena. Despite previously representing that WhatsApp was Defendant's preferred means of communication, Defendant's counsel now relayed his understanding that "[Defendant] did not use WhatsApp generally, other than with me and [his manager]," and, apparently, for that reason, Defendant did not produce any other WhatsApp messages. But defendant also has not produced any emails, text messages, or any other type of written communication. In fact, Defendant has not produced any emails or text messages in this case to date. Instead, defense counsel has represented that any responsive communications that exist likely would be on X.

Regrettably, not only does it defy credulity that no additional responsive communications exist other than on X, Defendant's representation is false. Indeed, later on the very same day that Plaintiff received this representation, non-party Alex Lord (who Plaintiff separately subpoenaed) produced to Plaintiff screenshots of responsive text messages with Defendant during the relevant timeframe, in which Defendant asked Lord to help him create offensive Photoshopped content of Plaintiff for Defendant to post to his social media account:

12474783.v1

Sills Cummis & Gross
A Professional Corporation

Honorable Michael A. Hammer
July 10, 2024
Page 4




*Example of a responsive text message between Defendant
and non-party Lord (and altered image) that Defendant did not produce*

12474783.v1

Sills Cummis & Gross
A Professional Corporation

Honorable Michael A. Hammer
July 10, 2024
Page 5

 

*Another example of a responsive text message between Defendant
and non-party Lord (and altered image) that Defendant did not produce*

Defendant **did not** produce any of the above communications, instead claiming he had no other responsive communications.

      Furthermore, despite the representation that Defendant only used WhatsApp to communicate with his counsel and with his manager, non-party Mams Taylor of Misfits (the promoter of the boxing match that Defendant claims was the motivation for his offensive posts against Plaintiff) produced to Plaintiff the following WhatsApp communication string with Defendant, in which the two discussed Taylor's insistence that Defendant delete his social media post containing the explicit photograph of Plaintiff.

12474783.v1

Sills Cummis & Gross
A Professional Corporation

Honorable Michael A. Hammer
July 10, 2024
Page 6



*Example of a responsive WhatsApp message
with non-party Taylor that Defendant did not produce*

This string also **was not** produced by Defendant.

      As if it were not sufficiently clear that responsive materials continue to be withheld by Defendant, although most of the materials in Defendant's limited Instagram production from May 2024 were unresponsive, several of the Instagram communications in that production signaled the existence of yet additional responsive and unproduced communications. For example, in one such communication between Defendant and a comedian named Tony Hinchcliffe, Defendant solicited the creation of offensive and distasteful jokes about Plaintiff that he could then post to his social media account. The Instagram exchange ended with Defendant requesting more jokes and asking for Hinchcliffe's phone number, which Hinchcliffe provided, suggesting that their conversation continued offline via text message.

Sills Cummis & Gross
A Professional Corporation

Honorable Michael A. Hammer
July 10, 2024
Page 7



*Instagram message between Defendant and non-party Hinchcliffe
indicating the likely existence of additional unproduced text messages*

Of course, Defendant **has not** produced any such text messages between him and Hinchcliffe.

The above examples illustrate there is no serious question that, in the context of Defendant's months-long campaign of cyber harassment against Plaintiff, during which he posted about her upwards of 10 times per day, he was communicating about his conduct frequently.[3] Plaintiff is entitled to those communications, but Defendant is purposefully withholding those communications while falsely maintaining nothing further exists.

(iii)  <u>Interrogatories to Defendant</u>

In addition to the outstanding documents that are owed, Plaintiff has been following up with Defendant for months about the inadequacy of several of his Interrogatory answers.  These Interrogatories seek information that is plainly relevant to this case for reasons detailed in

---

[3]  During the conferral process with defense counsel, Plaintiff attempted to facilitate Defendant's collection of responsive communications by providing search terms.

12474783.v1

**Sills Cummis & Gross**
A Professional Corporation

Honorable Michael A. Hammer
July 10, 2024
Page 8

Plaintiff's letter motion [D.E. 56 at 7–10], including such basic information as: (i) What social media accounts Defendant used to post about Plaintiff, (ii) When and how Defendant came into possession of the explicit photograph of Plaintiff, and (iii) How Defendant obtained certain content he posted of Plaintiff that was not publicly available, but rather had been hacked from her Snapchat account. Defendant persists in his refusal to answer these Interrogatories. Instead of providing the information to his counsel to then respond to Plaintiff, defense counsel was left with insisting earlier this week: "As for the rog [Interrogatory] responses, take his deposition and ask him about whatever you like . . . ."

### B. Defendant's Social Media Activities

Meanwhile, despite his failure to take any of his discovery obligations seriously, Defendant continues to find time to harass Plaintiff and mock this proceeding on social media to maximize his engagement on X and Instagram. The below are several examples of his recent posts:




*Posted July 9, 2024*          *Reposted July 7, 2024*

12474783.v1

**Sills Cummis & Gross**
A Professional Corporation

Honorable Michael A. Hammer
July 10, 2024
Page 9



*Posted May 21, 2024*



*Reposted May 22, 2024*

### C. Plaintiff's Requested Sanctions

Plaintiff maintains that sanctions are warranted as a result of Defendant's purposeful discovery violations, which are prejudicing Plaintiff's ability to prosecute her case. "The decision to impose sanctions for discovery violations and any determination as to what sanctions are appropriate are matters generally entrusted to the discretion of the district court." *Bowers v. Nat'l Collegiate Athletics Ass'n*, 475 F.3d 524, 538 (3d Cir. 2007). Plaintiff requests that, at a minimum, she be awarded her attorney's fees and costs incurred as a result of Defendant's discovery failures. *See Zawadsky v. Bankers Std. Ins. Co.*, 2015 U.S. Dist. LEXIS 173789, at *35–37 (D.N.J. Dec. 30, 2015) (ordering defendant to pay fees and costs incurred as a result of defendant's discovery violations).

Additionally, given the known existence of responsive communications that have not been produced, Defendant's failure to cure his discovery deficiencies despite many opportunities, and Defendant's false representations that responsive materials do not exist,[4]

---

[4] Defendant's false representations about the nonexistence of responsive materials were not the result of an honest mistake or oversight; they are underscored by his sworn Interrogatory

12474783.v1

Sills Cummis & Gross
A Professional Corporation

Honorable Michael A. Hammer
July 10, 2024
Page 10

Plaintiff submits that this Court should require Defendant to immediately turn over his mobile phone and all other electronic devices he used during the relevant time period (and any computer from which he engaged in his offending social media activities) to a third-party ESI vendor for the creation of a forensic image, at his own expense.  The order should require the Parties' counsel to confer about an appropriate protocol whereby the Defendant can identify and withhold materials <u>only</u> on the basis of privilege, and everything else must be turned over to Plaintiff subject to the confidentiality order that is in place.  *See Robinson v. City of Arkansas City, Kan.*, 2012 WL 603576, *17 (D. Kan. Feb. 24, 2012) (ordering creation of a mirror image of defendant's computer as a result of defendant's discovery transgressions).  Although a drastic remedy, it has become apparent this is the only way for Plaintiff to obtain the discovery to which she is entitled.[5]

### D. The Pretrial Calendar

Finally, as part of this Court's Order to Show Cause, this Court held in abeyance discovery deadlines in this case.  Plaintiff requests that this Court continue to do so given that Plaintiff still has not obtained the discovery she is owed by Defendant.  Besides discovery from Defendant, Plaintiff has continued to pursue non-party discovery, including from X. Plaintiff continues to confer with X regarding the discovery sought pursuant to a subpoena, and as to certain requests, Plaintiff anticipates she may need to file an action in California seeking an order to enforce that subpoena.  Notwithstanding the delays presented by the discovery obstacles identified above, Plaintiff has been actively litigating this case and doing her best to move it forward, with several non-party depositions scheduled for next week.

We look forward to addressing these matters with Your Honor at the July 11, 2024 hearing.

Respectfully submitted,

*/s/ Joseph B. Shumofsky*
Joseph B. Shumofsky
Jeffrey Neiman
Jason L. Mays

cc: Counsel for Defendant Dillon Danis (via ECF)

---

answers, in which he attested that nobody other than him contributed to the content of his social media posts about Plaintiff – even though, as the communications excerpted above show, that was not true.

[5] Plaintiff also requests that this Court require Defendant to post a bond in a sufficient sum to guarantee payment of the cost of a third-party ESI vendor.

12474783.v1