# Sills Cummis & Gross
A Professional Corporation

The Legal Center
One Riverfront Plaza
Newark, New Jersey 07102
Tel: (973) 643-7000
Fax (973) 643-6500

Joseph B. Shumofsky, Esq.
Member
Direct Dial: 973-643-5382
Email: jshumofsky@sillscummis.com

101 Park Avenue
28th Floor
New York, NY 10178
Tel: (212) 643-7000
Fax: (212) 643-6500

August 23, 2024

**VIA ECF**
Honorable Michael A. Hammer
United States District Court
Martin Luther King Building & U.S. Courthouse
50 Walnut Street
Newark, NJ 07101

Re: *Nina Agdal v. Dillon Danis*, 23-CV-16873 (MCA)(MAH)

Dear Judge Hammer:

We represent Plaintiff in the above-referenced matter. We submit this status letter in advance of the telephonic conference scheduled for August 27, 2024, at 2:30 p.m., to update the Court regarding the status of discovery and related issues. In particular, we want to advise the Court of a concerning development impacting Defendant's supposed inability to fully comply with his Court-ordered discovery obligations. On August 20, 2024, Defendant represented through his counsel, for the first time, that his cellular phone – the exclusive device he represented he had used to engage in the conduct underlying the allegations here – had "died" in January 2024, long after (i) this case was filed in September 2023, (ii) Defendant had been served with a preservation notice, and (iii) Plaintiff's discovery requests had been served and pending since November 2023. As a result, Defendant stated he no longer possesses any of his text message communications from the relevant time period. Accordingly, Plaintiff seeks further relief from this Court regarding Defendant's failure to comply with his discovery obligations.

## A. Defendant's Efforts to Comply with His Discovery Obligations and His Representation That His Cellular Phone "Died"

On July 11, 2024, this Court held an in-person hearing on its May 31, 2024 Order to Show Cause. At that hearing, Defendant's discovery non-compliance was addressed at length. Following the hearing, this Court entered an Order denying *without prejudice* Plaintiff's request that the Court impose sanctions, but requiring in relevant part that, by August 18, 2024,

**Sills Cummis & Gross**
A Professional Corporation

Honorable Michael Hammer
August 23, 2024
Page 2

Defendant "search for and produce all responsive materials, as well as all of Defendant's communications regarding either Plaintiff's image or the posting of Plaintiff's image on social media." D.E. 63 at ¶ 3. The Court also ordered that, by the same day, Defendant file a certification outlining his efforts to comply with the Order and attesting that his productions "constitute[] the entirety of responsive materials in [his] custody, possession or control, exclusive of those related to X." *Id.* at ¶ 4.

In response to those Orders, between August 14 and August 18, 2024, Defendant served amended written discovery responses and produced the following materials: (1) Defendant's X (formerly Twitter) archive data and analytic information, (2) two WhatsApp message strings, and (3) approximately 130 photos/videos of Plaintiff that had been stored on Defendant's cellular phone. Defendant also served a certification of the steps he had taken and what he had produced. The certification did not confirm that Defendant's productions constituted the entirety of his responsive materials, as required by the July 11 Order.

On August 20, 2024, we emailed opposing counsel with questions about Defendant's recent productions and asked about the absence of any text messages. Indeed, Plaintiff was aware that Defendant had communicated with third parties via text message about the issues in dispute, and, therefore, expected those communications (and others) to be among Defendant's productions.[1] Defendant's counsel responded that he had personally searched Defendant's cellular phone and iCloud for messages, but "*his [Defendant's] message app was not set to back*

---

[1] Plaintiff knows Defendant communicated via text message with, at least, non-parties Alex Lord and Anthony Hinchcliffe about creating content of Plaintiff to post on social media – photoshopped images of Plaintiff and jokes about Plaintiff. Lord produced a handful of responsive text messages in response to a subpoena and disclosed that other responsive messages with Defendant existed that he no longer possesses because he switched phones. Additionally, based on a review of other materials received in discovery (Instagram messages between Defendant and Hinchcliffe), it is evident Defendant had continued his communications with Hinchcliffe over text. Plaintiff is attempting to obtain Defendant's messages with Hinchcliffe through a subpoena. In any case, Defendant should have had and produced the text communications with Lord and Hinchcliffe, and it reasonable to think responsive communications with other individuals existed. Notably, although relevant text (and other) communications between Defendant and others existed, in response to an Interrogatory question asking for the identity of those individuals who contributed to the content of any posts about Plaintiff on Defendant's social media accounts, Defendant originally responded that there were no such communications. After calling out Defendant for the falsity of his answer, Defendant has since amended his response to state he had communications with "Alex Lord and, possibly, others whose identities [he] do[es] not presently remember."

**Sills Cummis & Gross**
A Professional Corporation

Honorable Michael Hammer
August 23, 2024
Page 3

*up to iCloud (only photos) and his cell phone **died** in January 2024. So, no retrievable text messages after 2020.*" (emphasis added)

But regardless of what happened to Defendant's cellular phone in January 2024, the communications (and any other response data) still should have been available to be produced. Defendant's obligation to preserve relevant information and data arose, at the latest, almost a year ago in early September 2023, when Plaintiff initiated this action. And putting aside any independent obligation to maintain evidence or preservation notice he may have received from his counsel, when Plaintiff served Defendant at the start of this action, she included a preservation notice directed to Defendant. *See* D.E. 12 (indicating Defendant was served with "Plaintiff's Notice of Commencement of Litigation"). Moreover, after Defendant's counsel appeared in the case, that same preservation notice was provided to counsel, as well. *See* Ex. A. Thereafter, by November 16, 2023, Plaintiff served her First Requests for Production on Defendant. Thus, well prior to January 2024 and whatever allegedly occurred with Defendant's phone, Defendant was on notice of his discovery obligations and need to preserve responsive information, especially on his cellular phone – given that, as he had represented, he had used his cellular phone, *exclusively*, to carry out the activities underlying Plaintiff's claims.[2] Regrettably, it appears that Defendant never took steps to preserve the data on his cellular phone.

Given Defendant's failure to take this proceeding seriously – *e.g.*, evading service, repeatedly mocking the case on social media, providing certain sworn Interrogatory answers that were false, and ignoring his production obligations – we have serious questions and concerns about the circumstances surrounding Defendant's claimed inability to retrieve his responsive text messages, including what exactly happened to his phone; what steps were taken, if any, to preserve the data on his phone or to image his phone; whether a forensic specialist was consulted to determine if the communications can still be accessed; and why these circumstances are only now being disclosed to Plaintiff.[3] Plaintiff therefore requests the following:

---

[2] For months, Defendant failed to produce any documents, and his discovery failures were addressed at several status conferences, prompting Orders to compel and opportunities for Defendant to cure his non-compliance even before the July 11 "show cause" hearing. *See, e.g.*, D.E. 54, 57. At no point prior to August 20, did Defendant ever advise Plaintiff that his phone had "died" and communications had been lost. Moreover, Defendant did not affirmatively inform Plaintiff of this information; rather, Plaintiff learned this only after sending follow up questions to Defendant's counsel.

[3] Putting aside any spoliation issues, had Plaintiff received prior notice that Defendant's text messages were irretrievable, it would have influenced Plaintiff's case strategy and discovery efforts with respect to other nonparties, in an effort to otherwise obtain the relevant communications and information.

**Sills Cummis & Gross**
A Professional Corporation

Honorable Michael Hammer
August 23, 2024
Page 4

(1) That the Court inquire at the upcoming status conference what exactly happened to Defendant's phone, and assuming the phone still exists, order Defendant to retain a forensic vendor at his own expense – to the extent this has not already been done – to examine his cellular phone and determine if any of his text messages (and other data) can be retrieved, and to then provide a certification from the vendor. In the July 11 Order, the Court warned that, "[i]f it comes to the Court's attention that Defendant did not produce all responsive documents as outlined in this Order, a forensic vendor shall search all of Defendant's necessary accounts" and "[a]ny such forensic search shall solely be at Defendant's expense."

(2) Then, if the responsive information is actually irretrievable, that the Court enter another Order to Show Cause and schedule a hearing, at which Defendant should be required to appear in person and personally answer under oath what efforts did Defendant undertake to preserve the data on his cellular phone, what happened to his phone, and why the responsive communications (and any other responsive data) no longer are available.[4]

### B. The Status of Other Discovery

Plaintiff has several depositions scheduled in the coming weeks: Alex Lord on September 6, 2024, and Matthew Long on September 19, 2024.[5] Plaintiff also is in the process of initiating a proceeding in the Northern District of California to enforce X's compliance with a non-party document subpoena, which we hope will move quickly given the limited nature of the relief sought and our discussions with X's counsel about the non-adversarial position they intend to take in that proceeding. As a result of Defendant's claimed inability to retrieve his text messages, Plaintiff also is now exploring the need to issue additional subpoenas to individuals with whom Defendant is known or believed to have communicated about the conduct at issue.

Considering these developments, and because Plaintiff is pregnant and expecting her first child in late September, Plaintiff requests that the Court continue to stay the pretrial deadlines, to be revisited at a later status conference.

---

[4] Plaintiff reserves the right to seek additional relief and sanctions as warranted, including an adverse inference instruction or entry of a judgment in her favor, depending on the information further obtained regarding Defendant's inability to produce responsive records.

[5] Both Lord and Long are individuals who communicated with Defendant about his social media posts about Plaintiff.

Sills Cummis & Gross
A Professional Corporation

Honorable Michael Hammer
August 23, 2024
Page 5

      We look forward to addressing these issues at the status conference on August 27, 2024.

                Respectfully submitted,

                */s/ Joseph B. Shumofsky*

                Joseph B. Shumofsky, Esq.
                Jeffrey A. Neiman, Esq.
                Jason L. Mays, Esq.

cc: Counsel for Defendant Dillon Danis (via ECF)

# EXHIBIT A

## Althea Price-Drayton

| | |
|---|---|
| **From:** | Jason Mays <jmays@mnrlawfirm.com> |
| **Sent:** | Monday, October 9, 2023 1:44 PM |
| **To:** | mberman@hdrbb.com |
| **Cc:** | Jeffrey Neiman; Joseph B. Shumofsky |
| **Subject:** | Agdal v Danis |
| **Attachments:** | 2023-09-06 _ Notice of Commencement of Litigation.pdf |

Mark, attached is the letter that Jeff referenced on the call. Separately, please let us know your availability for a call next week to do the Rule 26(f) conference. Thanks, Jason

Jason L. Mays, Esq.
Marcus Neiman Rashbaum & Pineiro LLP
Telephone: 305-434-4941
jmays@mnrlawfirm.com
www.mnrlawfirm.com

1



MARCUS NEIMAN RASHBAUM & PINEIRO LLP

www.mnrlawfirm.com

September 6, 2023

***VIA EMAIL to***
johnm@paradigmsports.com

Dillon Danis
c/o John Meehan, Esq.
Paradigm Sports Management, LLC

      **Re:  Notice of Commencement of Litigation**

Mr. Danis,

      We represent Nina Agdal in connection with a lawsuit that has been filed against you in the United States District Court for the District of New Jersey, in which she asserts claims pursuant to 15 U.S.C. § 6851 and N.J. Stat. § 2S:58D-1 arising out of your posting of a sexually explicit photograph of her on the internet without her consent. I write on behalf of Ms. Agdal to notify you of your obligation to retain and preserve certain materials that may be relevant to the litigation, including hard-copy documents and electronically stored information (ESI). This obligation encompasses the time period of January 2022 to the present, and it encompasses communications of any type (including, for example, text messages, emails, and communications sent through Twitter or any application), electronic files of any type (Microsoft Word, Excel, Adobe, etc.), notes, images, recordings, voicemails, and any other digitally stored information. If it is your practice to automatically delete or discard any such data that may be relevant (e.g., an auto-

MIAMI OFFICE
One Biscayne Tower
2 South Biscayne Boulevard, Suite 2530, Miami 33131
P • 305-400-4260 | F • 866-780-8355

FORT LAUDERDALE OFFICE
One Financial Plaza
100 Southeast Third Avenue, Suite 805, Ft Lauderdale 33394
P • 954-462-1200 | F • 866-780-8355

2

delete function on a cellular phone or email inbox), you are required to take steps to cease such practices in order to comply with the obligations set forth herein.

Please govern yourself accordingly.

Respectfully,

*/s/ Jeffrey A. Neiman*

Jeffrey A. Neiman
jneiman@mnrlawfirm.com
954-462-1200
Jason L. Mays
jmays@mnrlawfirm.com
305-434-4941

MIAMI OFFICE
One Biscayne Tower
2 South Biscayne Boulevard, Suite 2530, Miami 33131
P • 305-400-4260 | F • 866-780-8355

FORT LAUDERDALE OFFICE
One Financial Plaza
100 Southeast Third Avenue, Suite 805, Ft Lauderdale 33394
P • 954-462-1200 | F • 866-780-8355