```
                      UNITED STATES DISTRICT COURT
                         DISTRICT OF NEW JERSEY

NINA AGDAL,                         .
                                    .
        Plaintiff,                  .
                                    .  Case No. 23-cv-16873
vs.                                 .
                                    .  Newark, New Jersey
DILLON DANIS,                       .  August 27, 2024
                                    .
        Defendant.                  .
                                    .


                        TRANSCRIPT OF HEARING
               BEFORE THE HONORABLE MICHAEL A. HAMMER
                  UNITED STATES MAGISTRATE JUDGE


APPEARANCES (the parties appeared via teleconference):

 For the Plaintiff:        JOSEPH BRUCE SHUMOFSKY, ESQ.
                           Sills Cummis & Gross P.C.
                           One Riverfront Plaza
                           Newark, NJ 07102
                           (973) 643-5382
                           jshumofsky@sillscummis.com

                           JASON L. MAYS, ESQ.
                           MNR Law Firm
                           One Biscayne Tower
                           2 South Biscayne Blvd, Suite 2530
                           Miami, Florida 3313-1000
                           (305) 434-4941
                           jmays@mnrlawfirm.com




Audio Operator:

Transcription Service:     KING TRANSCRIPTION SERVICES, LLC
                           3 South Corporate Drive, Suite 203
                           Riverdale, NJ  07457
                           (973) 237-6080


Proceedings recorded by electronic sound recording; transcript
produced by transcription service.
```

```
 1  (APPEARANCES continued)

 2  For the Defendant:      MARK A. BERMAN, ESQ.
                            Hartmann Doherty Rosa Berman &
 3                          Bulbulia, LLC
                            433 Hackensack Avenue, Suite 1002
 4                          Hackensack, NJ 07601
                            (201) 441-9056
 5                          mberman@hdrbb.com

 6

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1              <u>I N D E X</u>

2

3
                                                         **Page**
4
    Proceedings                                          4
5
    The Court's Ruling                                   14
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1          (Commencement of proceedings)

2

3          THE COURT:  All right.  Good afternoon, everybody.

4    This is Judge Hammer.

5          We are on the record in Nina Agdal v. Dillon Danis,

6    Civil No. 23-16873.

7          Who do I have for plaintiff Nina Agdal?

8          MR. SHUMOFSKY:  Good afternoon, Your Honor.  Joseph

9    Shumofsky on behalf of Nina Agdal.

10          MR. MAYS:  Jason Mays on behalf of plaintiff as

11    well.

12          THE COURT:  All right.

13          And then how about for Mr. Danis?  Mr. Berman?

14          MR. BERMAN:  Good afternoon, yes.  Good afternoon,

15    Your Honor.  It's Mark Berman on behalf of Dillon Danis.

16          THE COURT:  All right.  Good afternoon.

17          So we're obviously on the record to deal with the

18    letters that were filed August 23rd and August 26th

19    concerning Mr. Danis's, quote/unquote, dead phone.

20          Have the parties had any further discussions about

21    this, since the letters, about which I should be aware?

22          MR. SHUMOFSKY:  No, Your Honor.

23          MR. BERMAN:  No, Your Honor.

24          THE COURT:  All right.

25          So, Mr. Berman, let me ask you.  What does it mean

1   the phone died?  What does that mean?

2            MR. BERMAN:  Well, I can just tell you my

3   understanding, so --

4            THE COURT:  Yes.  That's all I asked.

5            MR. BERMAN:  -- not anyone rely on mine.

6            My understanding is is that the phone was being

7   charged and that it got fried.  My understanding is the phone

8   still exists.  So if anybody wants to have it examined,

9   that's possible.  It hasn't been discarded.

10           THE COURT:  Where is it now?  Is it with Mr. Danis?

11           MR. BERMAN:  It is with Mr. Danis, yeah.

12           THE COURT:  Okay.  We'll come back to talking about

13  that.

14           Okay.  Go ahead.  I'm sorry.  Continue.

15           MR. BERMAN:  And, you know, he's not -- he got a

16  new phone, and whatever -- whatever was on, you know -- and

17  when you get a new -- he had a iPhone.  And when you get a

18  new iPhone, whatever happens to the -- whatever settings are

19  set to be backed up were transferred to the new phone, and

20  whatever isn't set to be backed up to the cloud wasn't

21  transferred.

22           So, for example, we produced lots of photographs of

23  plaintiff that were on his phones; right?  So he didn't

24  delete those intentionally.  So if you were -- I mean, that's

25  why I say that I think the next logical step is for them to

1  depose Dillon Danis so it's not me speaking; it's him

2  speaking.

3          But --

4          THE COURT:  Right.  No.  We'll -- and we're going

5  to get to that.  I have some ideas in mind.  But go ahead.

6          MR. BERMAN:  But just on the issue, oh, he

7  intentionally destroyed his phone, well, if you're doing

8  that, why would I -- why would he have kept pictures of Nina

9  Agdal on his phone?  He would have gone all in.

10          So in any event, I -- as I said in my letter, I,

11  obviously, understand the concern.  And I wasn't involved.

12          So I think he's the one who should be asked.

13          THE COURT:  Of that I'm quite sure that you weren't

14  involved.

15          Let me ask this.  How is it -- and, again, this may

16  be a question for his deposition, but -- that he didn't

17  disclose this to anybody -- and you don't have to comment on

18  this, but I'm quite sure, including you -- until August, and

19  notwithstanding all of the letters, the hearings that we had

20  on July 11th that we have to find out about this this late in

21  the game?

22          MR. BERMAN:  I think the short answer is -- and --

23  is that -- I don't think he uses text that often, and I don't

24  think it's something -- he's not sophisticated.  So he's not

25  thinking about it the way -- he doesn't really understand the

1  whole process, notwithstanding my attempt to help him

2  understand.

3          So that's the only explanation I can give.  It's

4  not -- it's just he's not a college graduate.  He's not

5  sophisticated.  It's not something he's experienced before.

6  And he just -- he just doesn't understand how the process

7  works.

8          THE COURT:  Right.  Okay.

9          MR. BERMAN:  But, again, I guess -- I think that's

10 a better question asked of him rather than my --

11         THE COURT:  It's funny you say that, Mark, because

12 as you were answering, I'm like, this really is better

13 question of him -- because at least, as alleged in the

14 complaint and certainly in Sills's, he clearly does text.

15 But, yeah, that could be followed up in any deposition.

16         Let me ask --

17    (Simultaneous conversation)

18         THE COURT:  Go ahead.  Tell me what you wanted to

19 tell me.

20         MR. BERMAN:  Listen, as I said, I understand the

21 concern.

22         The -- if there was intentional spoliation here,

23 well, then there's -- eventually, there's going to be an

24 application.  It's not going to change as of -- happening,

25 some inquiry next week as opposed to after his deposition,

1   like, if I -- you know, why not get him under oath explaining

2   all this stuff rather than having it come through my partial

3   understanding.  And then everyone can see where things stand,

4   including, you know, maybe it makes sense to try to

5   resuscitate that phone, though what my understanding is he

6   asked the Apple -- you know, he took it to the Apple store or

7   whatever, and they said it was -- there was nothing that

8   could be taken from it.

9          But --

10     (Simultaneous conversation)

11         MR. BERMAN:  But better he should answer those

12   questions than I'm answering them.  That's for sure.

13         THE COURT:  So let me ask Mr. Shumofsky.  The text

14   messages, obviously, are at least important insofar as they

15   very possibly would establish -- or be probative at least of

16   Mr. Danis communicating with, like, Alex Lord and Anthony

17   Hinchcliffe about plaintiff and posting content related to

18   plaintiff on social media.

19         So I get -- at least from a discovery standpoint,

20   the relevance of the text messages.

21         But do you have all of the content that you expect

22   to get from Lord?  And then you'll tell me next, if you don't

23   mind, about the status of the subpoena to Hinchcliffe.

24         MR. SHUMOFSKY:  Sure.  The -- as far as, you know,

25   do we have everything that we have from Lord, you know, I

1  believe Lord's the one, Your Honor, that said, you know, here

2  are text messages.  There are others, but I don't have them

3  anymore with the guess that there's others.

4           In addition, putting aside the status of the

5  nonparty subpoena to Hinchcliffe, they'd be -- I underscore

6  the fact that these are nonparty subpoenas, and nonparties

7  are never as cooperative -- or they're less cooperative

8  sometimes than the party --

9           So in this case, with respect to the phone and

10 putting aside any, you know, spoliation, that's what I was --

11 we were interested in discussing today.

12           But with respect to finding other communications,

13 one of the things that Your Honor made part of the Court's

14 order on July 11th was that if there were -- you know, it

15 comes to the Court's attention that there's other

16 communications that weren't produced, there would be a

17 forensic vendor at defendant's expense.

18           So the phone exists.  The phone has not been, you

19 know, destroyed, like run over, that there's something to be

20 looked at.  And it seems that a forensic vendor should be --

21 I don't know why, if it hasn't been done already, to search

22 the phone to see what can be happened.  And then if there's

23 nothing -- if there's nothing that can be retrieved, then

24 okay.

25           But, you know, to say, to rely on Mr. Danis saying,

1   well, I alleged -- whatever he did, whether it was he checked

2   it, didn't check it, what Apple said is like there are

3   mechanisms in place to see if we can go at those other

4   communications that we know are available.  And there could

5   be those and others on Mr. Danis's phone.

6          Certainly, Mr. Danis can answer all sorts of

7   questions about what he did or didn't do.  But that's not

8   what we're interested in.  We're interested in getting at --

9   getting at those communications and having those

10  communications because then the point of a deposition is that

11  to be armed with whatever communications, discovery, evidence

12  you have and then to question a party about that.  There are

13  things short of the deposition -- we shouldn't jump the

14  deposition to sort of try and figure this out.  There should

15  be a forensic analysis, if it hasn't already been done, of

16  the phone to see what can be retrieved.  If something cannot

17  be retrieved, then we know where we are, and there's nothing

18  else.  And separate spoliation applications or whatnot, to

19  the extent they may happen, that's for another day.

20         But that seems to -- that would be something, as we

21  indicate in our letter, Your Honor, what we think should be

22  ordered in this case and this is an extension of what

23  happened on July 11th, where, to come back and find out, did

24  we get everything, seems like we did not.

25         So we'd like a forensic vendor be paid at

1    defendant's expense to search his phone.

2            THE COURT:  Has anybody priced out what a forensic

3    vendor would cost to do this sort of analysis?

4            MR. BERMAN:  I haven't.  This is Mark.  I have not.

5            THE COURT:  I'm not taking the forensic vendor off

6    the table, but I have to say, Mr. Shumofsky, I'm also not

7    taking off the table the possibility that, notwithstanding,

8    the July 11th order, that the parties split the cost because

9    paragraph 5 of the July 11th order presupposed that plaintiff

10   produced all the documents and discovery in his possession,

11   custody, or control.

12           So far what we have doesn't rise nearly yet to the

13   level at least of spoliation.  We have a guy who well before

14   the litigation began, apparently killed his phone.  And --

15       (Simultaneous conversation)

16           MR. SHUMOFSKY:  Your Honor --

17       (Simultaneous conversation)

18           THE COURT:  After the litig- -- let me finish.

19   Sorry.

20           After the litigation had started.  But the point is

21   I haven't seen anything yet.  And this may very well be borne

22   out by deposition testimony that the phone, quote/unquote,

23   dying or frying or suffer some other ignominious end, at

24   least from what I can see so far, hasn't been through the

25   fault of the plaintiff.  And so I don't know yet that there's

|Hearing
|23-cv-16873, August 27, 2024

1    spoliation.  Yes, you could make the argument that he should

2    have been sending that backup to the cloud.  But whether that

3    rises to the level of spoliation is certainly a conclusion I

4    am not at all prepared to make.

5         It strikes me that if plaintiff truly wants to see

6    what's on the phone at this point, from a discovery

7    standpoint, and there being no indicia that the defendant is

8    playing games or trying to hide that discovery, that

9    fundamental fairness dictates that the parties split the

10   costs rather than the defendant unilaterally bear all those

11   costs.

12        MR. SHUMOFSKY:  Your Honor, the -- I hear what the

13   Court's saying.

14        In this case, this isn't a scenario where it turns

15   out that there was information that were on servers, for

16   example, that were put on backup tapes at a company and then

17   to access these backups tapes are very expensive and so, you

18   know, that the parties should share the costs.

19        This is a scenario where the device that the

20   defendant primarily used to engage in the conduct wasn't

21   searched.  And just saying, well, it's died, and there is a

22   mechanism to do that.  And defendant hasn't even looked --

23   so, you know, in this case, the -- you know, and there are

24   indicia that -- and, again, I am not talking about

25   spoliation.  I'm just talking about obligation.  There are

1    indicia here that there are other text messages that would be

2    available, communications that would be available.  This is

3    something that should have been done.  And defendant came and

4    gave us a certification that says, well, I searched my mobile

5    phone for documents and images.

6         And it was for us to say, well, wait a second.

7    What about communications, something that would be one of the

8    most obvious things that you would expect from a phone and

9    something that plaintiff's counsel has asked for several

10   times, and then we found out, well, the phone died.

11        Well, okay.  That happens, whatever that means.  We

12   can find out what -- did you figure out?  Did you try to

13   investigate?  But, independent, defendant should be saying,

14   well, I need to find out, can I get at this?  How much will

15   it cost?  And to come back and say, well, it's $100,000 to do

16   this.  That seems to be disproportionate to the needs of the

17   case.  But if it's $2,000, that seems to be something that

18   should squarely fall as the defendant -- like this isn't some

19   random piece --

20        THE COURT:  Yeah, but you made the application, and

21   you don't have the cost information; so I don't know either.

22        MR. SHUMOFSKY:  But all I'm saying, Your Honor, is

23   this seems to be something -- Your Honor, we can get that

24   information.

25        I'm suggesting, respectfully, this is something

1   defendant on their own should be, like, well, they looked

2   into it.  They figured out it's this much and this is why as

3   opposed to plaintiff once again chasing after defendant to

4   find, hey, can we get this.

5          I mean, but for the fact that we asked about these

6   communications, we wouldn't have known the phone died.  We

7   were only told that, oh, we searched the mobile phone for

8   documents and images.  We would -- if he shrugged and weren't

9   doing our job, we wouldn't have known.  Everybody would have

10  gone about their business.  Defendants --

11       (Simultaneous conversation)

12          THE COURT:  -- certainly agree with -- hold on.

13  Here's what I'll certainly agree.  It is beyond my reckoning

14  that Mr. Danis waited this long to disclose that the phone,

15  which he surely must have known before -- even before the

16  July 11th hearing, rightfully contained relevant information.

17  It is beyond -- and I understand Mr. Berman's argument that

18  he's not technically sophisticated.  But it doesn't make

19  somebody who's technologically sophisticated to understand --

20  once they understand that the adversary wants the text

21  messages, to understand that those are on the phone and,

22  therefore, the absence of the phone is something that should

23  be reported to counsel and the Court.

24          But here's what I'm going do.  One, I want

25  Mr. Danis to provide the phone to Mr. Berman by close of

1   business on Thursday so that Mr. Berman has custody of the

2   phone.  I agree with Mr. Berman that before we go into the

3   who pays for the forensic analysis of the phone, that I think

4   it's appropriate for the plaintiff to take the deposition of

5   Mr. Danis so that plaintiff can inquire about the

6   circumstances of the phone and get actual under-oath

7   testimony about the phone's demise, the defendant's efforts

8   to preserve the relevant material before the phone's demise,

9   after the phone's demise.  That will provide a much fuller

10  record for consideration of any future action by the Court,

11  including but not limited to whether the defendant should

12  solely bear the cost of any forensic evaluation.  I don't see

13  that there's any prejudice to the plaintiff at all because we

14  can easily still pivot to the forensic vendor.  It sounds

15  like the issue more isn't the forensic examination as much as

16  allocation of that cost, which I don't know, as I sit here

17  today anyway.

18          Moreover, in the latter part of plaintiff's

19  August 23rd submission, for a variety of reasons, including

20  but not limited to the anticipated proceeding in the Northern

21  District of California to get X to comply with a subpoena as

22  well as -- excuse me -- Ms. Agdal's expected -- delivery at

23  the end of September, plaintiff's already asked the Court to

24  stay the pretrial deadlines and revisit those at a later

25  conference, which I agree is the appropriate thing to do.

|Hearing
|23-cv-16873, August 27, 2024

1           I raise that now only to point out that not

2    proceeding with the forensic examination immediately causes

3    the plaintiff to prejudice, and I think we'll be informed, at

4    least as to the cost allocation on a more fully developed

5    record, particularly the testimony of Mr. Danis.

6           So the parties will schedule his deposition.  I

7    understand that plaintiff is going to have probably a lot of

8    questions for Mr. Danis.  So what I am willing to contemplate

9    is two depositions of Mr. Danis:  one that goes to the

10   specific circumstances of discovery and the phone; and then a

11   substantive Rule 30(b)(1) deposition that goes to the

12   reliability and damages in the case.  Obviously, I'm

13   contemplating that the limited deposition for purposes of

14   Mr. Danis's handling of his discovery obligations and

15   particularly the phone would take place sooner rather than

16   later.  And then the substantive deposition, you know, would

17   take place subsequently.

18          But that really is something that, if the parties

19   can agree and work out those dates or if you agree to do

20   something differently that still gets to completing the same

21   tasks, I certainly won't get in the middle and dictate

22   sequencing.

23          MR. SHUMOFSKY:  Your Honor.

24          THE COURT:  Yes.  Just -- I'm sorry.  Is this

25   Mr. Berman or Mr. Shumofsky?

|Hearing
|23-cv-16873, August 27, 2024

1          MR. SHUMOFSKY:  Mr. Shumofsky.

2          With respect to the deposition -- separate

3    deposition for the circumstances related to discovery issues.

4          THE COURT:  Right.

5          MR. SHUMOFSKY:  Considering the Court by that is --

6    and it seems like defense as well -- open to discovery and

7    basically ordering discovery on discovery, prior to the

8    deposition, we'd like to confer internally, but we'd like the

9    opportunity to first issue RFPs or interrogatories related to

10   those issues.

11         THE COURT:  No.  Why?  I mean, just why?  Just take

12   the deposition.  It's not that complicated.

13         MR. SHUMOFSKY:  But -- as an example, Your Honor,

14   it would -- fair -- but if we show up at deposition, like,

15   well, was there a preservation notice that you got

16   independently of that?  What did you do?  We don't have that

17   document, for example.  Like, oh, forget that.

18         So there are -- it's not voluminous.  But it's,

19   like, hey, what -- you know, are there documents related to

20   preservation efforts.  I don't know if he went to this Apple

21   thing -- whatever efforts he made, whether going to a

22   forensic vendor, Apple store, whatnot -- there are documents

23   that would be relevant to question him contemporaneously at a

24   deposition.  And we're not looking to -- you know, it could

25   be short turnaround.  I imagine there's not voluminous

1   records related to these issues.  But that's why we think

2   it -- I think it would be beneficial because it would

3   expedite what then would happen at deposition itself as

4   opposed to hearing about, well, I did this, I did that, I may

5   have records.  We would have those records in advance,

6   Your Honor.

7            THE COURT:  Okay.

8            Mr. Berman, what do I say?

9            MR. BERMAN:  What do I say?  I mean, I am not sure

10  what type of records they're expecting other than the phone.

11  I mean, I don't know what they're -- you know, when you go to

12  the Apple store and you have a broken phone and they tell

13  you, oh, it's broken, you need a new phone, they don't give

14  you a receipt for the old phone.  They give you the old phone

15  back.  So I am not sure what they're expecting.

16            But I will -- maybe this helps.  I am not going to

17  take the position that if they depose Dillon Danis -- I'm --

18  date -- in two weeks, that they're prohibited -- I'm going to

19  prohibit them, I'm going to object to their continuing a

20  deposition on a future date.  It seems clear to me that

21  they're at least going to have -- need the opportunity to

22  follow up on things, just given the nature of things.

23            But I really don't know what additional paperwork

24  there is.  If there was, I mean, I asked for it, and I didn't

25  receive it.  You know -- and I did specifically ask about --

1   you know, I said to him, well, like, was there any proof that

2   you went to the Apple store?

3           He's like, "Well, I bought a new phone.  I got a

4   new phone."

5           But -- and I was like "With respect to the old

6   phone."

7           He's like, "No.  You know, I just got a new phone."

8           So I don't know what -- I don't know what they're

9   expecting to receive and why -- you know, do they really want

10  responses to an RFP that says no documents?  I just -- just

11  ask him.  And then follow up with the RFPs if you think it

12  wasn't -- I mean ...

13      (Simultaneous conversation)

14          MR. BERMAN:  -- along --

15      (Simultaneous conversation)

16          MR. SHUMOFSKY:  Sorry.  Certainly it would save

17  time, Your Honor, if there was a preservation notice or

18  whatever records related to preservation.

19          THE COURT:  Wait.  But I thought -- there was a

20  preservation notice, is there not?  You had told me --

21          MR. SHUMOFSKY:  That was what -- what was what

22  plaintiffs gave to Mr. Danis.

23          THE COURT:  Right.

24          MR. SHUMOFSKY:  We're wondering if -- it's

25  certainly relevant and probative to the extent that he got,

|Hearing
|23-cv-16873, August 27, 2024

 1  independent of that, other preservation notices from counsel

 2  or other -- or -- whatever the case may be, did he otherwise

 3  notified about the issue, that would be something that he

 4  received that would be probative of that.

 5          So it's not --

 6      (Simultaneous conversation)

 7          MR. BERMAN:  Here's what I'm going to do.  I'm

 8  going to send you a redacted copy of my retainer agreement,

 9  which is relevant to what you're referring to.  That's the

10  only other document I can think of.

11          THE COURT:  Mark -- and I don't mean to intrude at

12  all on the attorney-client privilege, but it is fair game in

13  the deposition, when you got, I assume, the preservation

14  letter from Mr. Shumofsky?

15          MR. BERMAN:  I mean, as I sit here today, I don't

16  remember, but I believe --

17      (Simultaneous conversation)

18          MR. BERMAN:  -- sent.

19          I mean, here, I don't believe retainer agreement is

20  privileged, and my retainer agreement includes a direction to

21  all clients to preserve documents.  So you're talking about

22  what's fair game, I'll provide you with a redacted copy of my

23  retainer agreement, and that would be something respond --

24  relevant to what you're asking for.  I can't think of

25  anything else, but that would be responsive to the issue of

1    whether he knew he had to preserve information.

2            THE COURT:  Okay.  All right.

3            So I'm going to deny Mr. Shumofsky's request to

4    serve pre-deposition written discovery requests.  I just

5    think, as I said earlier, A, this is straightforward enough

6    and simple enough to where I don't regard -- I think serving

7    either limited written discovery at this point would unduly

8    delay the deposition and lead to further discovery issues

9    that a straightforward deposition of Mr. Danis under oath

10   would, much more likely than not, be able to run to ground,

11   particularly where this deposition, again, is not to get to

12   substantive issues of liability or damages in the case but to

13   the providence of the phone and Mr. Danis's preservation and

14   discovery obligations.

15           Certainly, in the course of taking that deposition,

16   if Mr. Danis represents that he had some related or relevant

17   document, certainly plaintiff's counsel can issue a request

18   for production.

19           Moreover, as Mr. Berman has already agreed, should

20   there be some remaining issue involving documents that

21   requires follow-up to this deposition, the parties also meet

22   and confer.  If they can agree on the scheduling of it, then

23   it will proceed.  If there's an issue, plaintiff's counsel

24   can come back and raise the issue with the Court.

25           All right.  Okay.

1              So I think we've at least, for the time being,

2     addressed that issue.

3              I'm on board for Mr. Shumofsky's proposal to

4     essentially not set new discovery deadlines in light of all

5     that's going on.

6              I assume there's no objection from you, Mr. Berman?

7              MR. BERMAN:  No.  No objection.

8              THE COURT:  And I think there's good cause for

9     that.  I mean, the parties are clearly doing their best to

10    move forward with the case, both here and I guess in the

11    Northern District of California.

12             What I propose we do is, one, the parties have

13    scheduled this -- I'll put it -- just -- put a term out, this

14    discovery deposition of Mr. Danis, once that has a date, the

15    parties, let me know of that date, and then we'll set up

16    another status conference shortly thereafter to talk about

17    the appropriate next steps.

18             Does that make fair -- sound fair?

19             MR. BERMAN:  Yes.

20             MR. SHUMOFSKY:  -- Your Honor.

21             THE COURT:  All right.  Good.

22             Anything else for plaintiff today?

23             MR. SHUMOFSKY:  I think that's it, Your Honor.

24             THE COURT:  Mr. Berman?

25             MR. BERMAN:  No, Your Honor.  Thank you.

1            THE COURT:  Okay.

2            One other thing.  To try and tamp down on the

3    amount of letters -- I am not faulting counsel at all in this

4    case.  I think you've all litigated the case admirably.  But

5    in the context of all of the other cases I have, what I'd

6    like to do going forward when issues get raised, rather than

7    letter letter letter letter, I'd like a joint letter, max

8    three double-spaced pages per side.  Okay?

9            And I know both of you well enough, Mr. Shumofsky

10   and Mr. Berman, to know that unlike some other cases, the

11   parties speak with each other and have no issue -- or problem

12   doing the joint letter.  It just makes it so much easier for

13   the Court to digest everything it needs to know to move

14   forward as efficiently as possible.  All right?

15           MR. BERMAN:  Yes, Your Honor.

16           MR. SHUMOFSKY:  Sure, Your Honor.

17           THE COURT:  Great.  All right.

18           I'll wait and see what you guys have once the Danis

19   discovery deposition is set.  Thank you very much.

20           Hope you all have a great Labor Day weekend.

21           MR. BERMAN:  You too.  Enjoy, everybody.

22           THE COURT:  Thanks, bye.

23                   (Conclusion of proceedings)

24

25

1                              Certification

2          I, SARA L. KERN, Transcriptionist, do hereby certify

3    that the 24 pages contained herein constitute a full, true,

4    and accurate transcript from the official electronic

5    recording of the proceedings had in the above-entitled

6    matter; that research was performed on the spelling of proper

7    names and utilizing the information provided, but that in

8    many cases the spellings were educated guesses; that the

9    transcript was prepared by me or under my direction and was

10   done to the best of my skill and ability.

11         I further certify that I am in no way related to any of

12   the parties hereto nor am I in any way interested in the

13   outcome hereof.

14

15

16

17

18   s/ *Sara L. Kern*                    4th of September, 2024

19   _____    _____
     Signature of Approved Transcriber              Date

20

21

     Sara L. Kern, CET**D-338
22   King Transcription Services, LLC
     3 South Corporate Drive, Suite 203
23   Riverdale, NJ  07457
     (973) 237-6080
24

25