```
                    UNITED STATES DISTRICT COURT
                      DISTRICT OF NEW JERSEY

NINA AGDAL,                      .
                                 .
        Plaintiff,               .
                                 . Case No. 23-cv-16873
vs.                              .
                                 . Newark, New Jersey
DILLON DANIS,                    . October 2, 2024
                                 .
        .                        .
                                 .


                      TRANSCRIPT OF HEARING
            BEFORE THE HONORABLE MICHAEL A. HAMMER
                UNITED STATES MAGISTRATE JUDGE


APPEARANCES (the parties appeared in person):

For the Plaintiff:       JOSEPH BRUCE SHUMOFSKY, ESQ.
                         Sills Cummis & Gross P.C.
                         One Riverfront Plaza
                         Newark, NJ 07102
                         (973) 643-5382
                         jshumofsky@sillscummis.com


For the Defendant:       PAUL S. DOHERTY, III, ESQ.
                         Hartmann Doherty Rosa Berman &
                         Bulbulia, LLC
                         433 Hackensack Avenue, Suite 1002
                         Hackensack, NJ 07601
                         (201) 441-9056
                         pdoherty@hdrbb.com



Audio Operator:

Transcription Service:   KING TRANSCRIPTION SERVICES, LLC
                         3 South Corporate Drive, Suite 203
                         Riverdale, NJ  07457
                         (973) 237-6080


Proceedings recorded by electronic sound recording; transcript
produced by transcription service.
```

|Hearing
|23-cv-16873, October 2, 2024                                                          2

 1                    (Commencement of proceedings)

 2

 3          THE COURT:  All right.  This is Nina Agdal versus

 4   Dillon Danis, 23-16873.

 5          Can I have appearances, please, beginning with

 6   plaintiff's counsel.

 7          MR. SHUMOFSKY:  Good morning, Your Honor.  Joseph

 8   Shumofsky, Sills Cummis & Gross, for plaintiff Nina Agdal.

 9          THE COURT:  All right.  Thank you.

10          And for the defense?

11          MR. DOHERTY:  Good morning, Your Honor.  Paul S.

12   Doherty III, at Hartmann Doherty Rosa & Berman, on behalf of

13   defendant Dillon Danis, who is seated to my right.

14          THE COURT:  Yes.  Today he is.  Yesterday, not so

15   much.

16          So what happened yesterday?

17          MR. DANIS:  I was sick.  I've been sick.  And I

18   told my lawyer that.

19          MR. DOHERTY:  And I'll --

20          THE COURT:  When did you tell your lawyer,

21   Mr. Danis?

22          Do you mind me asking your client about this,

23   Mr. Doherty?

24          MR. DOHERTY:  I do not, Judge.

25          THE COURT:  All right.  When were you sick?

1    Because this thing was scheduled for quite a while.

2              MR. DANIS:  Yes --

3              THE COURT:  And, frankly, it got a little -- it

4    seems a little convenient to me that you suddenly became

5    sick.

6              MR. DANIS:  I was like a month sick.  And then I

7    had to go to the doctor because it wasn't getting better --

8              THE COURT:  When?

9              MR. DANIS:  It would have to be this whole last

10   month.  And then I --

11             THE COURT:  No.  When did you go to the doctor?

12             MR. DANIS:  Maybe two weeks ago?  Not even.

13             And then they put me on antibiotics.  So the

14   antibiotic's going to kill my stomach.  And I haven't been --

15             THE COURT:  So you haven't gone anywhere else

16   either?  Out?

17             MR. DANIS:  No.  Not --

18             THE COURT:  Any events?  Nothing?

19             MR. DANIS:  Not that I recall.

20             THE COURT:  Do you have any contrary information,

21   Mr. Shumofsky?

22             MR. SHUMOFSKY:  Nothing in particular, Your Honor.

23   Other than stuff where he finds time to still tweet about

24   this court proceedings and my client.

25             MR. DANIS:  I didn't -- about your client.

1              THE COURT:  All right.

2              So, Mr. Danis, you know that you have your

3    deposition on Tuesday; right?

4              MR. DANIS:  Yes, Your Honor.

5              THE COURT:  And you understand you have to go to

6    that?

7              MR. DANIS:  Yes.

8              THE COURT:  All right.  So you'll be there.  Yeah?

9              MR. DANIS:  Yeah, as long as I have my counsel.

10             THE COURT:  Yeah.

11             MR. DANIS:  A lawyer.

12             THE COURT:  Sure.

13             MR. DANIS:  But that's what I was saying, if they

14   retracted a --

15             THE COURT:  No.  So -- well, let me ask.

16             Mr. Shumofsky, are there any other issues?  Look,

17   here's what I'm thinking.

18             I understand the issue, the applications in front

19   of me.

20             So let me ask Mr. Danis, do you oppose the

21   application to withdraw?

22             MR. DANIS:  It depends on if we can come to

23   agreement because me and him have been butting heads, and I

24   provided all the --

25             THE COURT:  Hold on.  I don't want to -- I don't

```
 1  want to interrupt you, and I am not trying to be

 2  disrespectful --

 3            MR. DANIS:  No, you're good.

 4            THE COURT:  I don't want you to -- I don't want to

 5  you -- I am not trying to impinge on the attorney-client

 6  privilege.  So if you've had conversations with your

 7  attorneys about the substance of the case, which I'm sure you

 8  have --

 9            MR. DANIS:  Yes.

10            THE COURT:  -- I don't want to delve into those.

11            All I want to understand is if -- so in the

12  application --

13            MR. DANIS:  The application is?

14            THE COURT:  This is the motion for leave to

15  withdraw.  This is the application that Mr. Berman filed on

16  September 12th.

17            Have you seen it?  Do you need a copy?

18            You gave him a copy, Mr. Doherty?

19            MR. DOHERTY:  Yes, I just provided him with one.

20            THE COURT:  So, in sum, Mr. Berman tells me,

21  frankly, that there are two problems there.  Problem 1 is

22  that you haven't paid the firm's monthly invoices --

23            MR. DANIS:  I've never missed a payment, sir.  I

24  might be late sometimes.  I have an accountant dealing with

25  it.  I have a lot going on.  You know, my dad just passed
```

1    and --

2              THE COURT:  I'm sorry to hear that.

3              MR. DANIS:  And I have a newborn, and sometimes my

4    accountant may be -- I mean, I've never not paid them.  I've

5    paid every single time.  Maybe a week late.  Not even.

6              MR. DOHERTY:  He just --

7              THE COURT:  Well, look, that's really a matter

8    between you and them.

9              All I'm -- I guess all I'm saying is I don't want

10   to intrude on the attorney-client relationship.  Right?

11   That's just an appropriate role for Court.

12             But if there's at least the possibility of

13   representation of Hartmann Doherty, Mr. Berman and the firm

14   continuing to represent you, we should know; right?  Because

15   then I won't rule on the motion to withdraw -- which,

16   frankly, I am not inclined to grant until at least after the

17   deposition -- and I want to hear from Mr. Shumofsky on

18   that -- because, frankly, this entire issue concerning the

19   phone has been, you know, dragged out and it slowed the case

20   up.  And I always --

21             MR. DANIS:  I have the phone.  I just didn't -- he

22   was in the --

23             THE COURT:  You have the phone.

24             MR. DANIS:  Yeah, Mr. Berman wasn't talking to

25   me --

```
 1              THE COURT:  Did you know that, Mr. Shumofsky?

 2              MR. SHUMOFSKY:  First we learned of this,

 3   Your Honor.

 4              THE COURT:  Well, I'm glad we're all together to

 5   run these issues to ground.

 6              MR. DANIS:  I answered all the questions, and he

 7   didn't want to put it in because I didn't pay, because I

 8   thought he was withdrawing, so I didn't pay --

 9              THE COURT:  Hold on.  Yeah, we'll come back to the

10   phone.

11              But, look, I don't know.  Mr. Doherty, you have to

12   tell me how you want to proceed because you're -- and I

13   understand you're filling in for Mr. Berman today.  So you

14   might know only so much.  And I appreciate you pinch-hitting

15   for Mr. Berman today.

16              If there is at least -- look, I guess it'll play

17   itself out.  So I am not going to grant the application for

18   withdrawal until, at a minimum -- and I want to give

19   Mr. Shumofsky an opportunity to be heard on this -- certainly

20   not before the October 8th deposition because that should

21   proceed and at least get that part of it advanced or get this

22   discovery further down the road.

23              After that -- and, again, subject to what the

24   parties want to tell me, we would have to -- then I would

25   take the motion for leave to withdraw under consideration.
```

1          So it seems to me, at least, then, practically

2    speaking, that will give Mr. Danis and counsel further time

3    to discuss themselves any issues in the attorney-client

4    relationship, whether they can be repaired, whether they

5    can't be repaired, and counsel still wants to withdraw -- I

6    don't know.

7          Mr. Doherty, tell me what -- if you have any input

8    on this?

9          MR. DOHERTY:  Certainly.  Thank you, Judge.

10          I've been the managing partner of our firm for 26

11    years until it was founded.  I can assure the Court that it's

12    a rare circumstance for my firm to be moving to withdraw.  So

13    I think it's both a matter of money and then, perhaps, more

14    importantly, a lack of communication from Mr. Danis to

15    Mr. Berman.

16          So we understand that it's a burden on the Court

17    when we move to withdraw.  And we -- you know, we don't take

18    this lightly.  It's something that we rarely do.

19          But, Mr. Berman, felt that under the specific

20    circumstances of this case, that he should move to withdraw.

21          THE COURT:  No, I understand that.  And that comes

22    through in his application.

23          But, I mean, I can't -- no.  I need you to tell me

24    or Mr. Berman to tell me whether the parties at least want

25    further discussion between and among themselves to see if the

 1    attorney-client relationship can be salvaged or not.

 2            If the answer is no, then the answer's no.

 3            But if the answer is, Judge, let's come back to

 4    this, and we'll have further discussions with Mr. Danis and

 5    let you know in the next week, two weeks, et cetera, then I'm

 6    amenable to that as well.

 7            But you have to tell me.

 8            MR. DOHERTY:  Judge, my understanding is that

 9    Mr. Berman feels that there's no hope of salvaging this

10    attorney-client relationship.  Otherwise, we would not have

11    filed the motion.

12            Of course, if the Court directs our firm to appear

13    at the deposition on the 8th, we will be there, and we

14    will --

15            THE COURT:  That has to happen.

16            MR. DOHERTY:  And we will zealously advocate for

17    Mr. Danis's interests.

18            THE COURT:  All right.  I appreciate that,

19    Mr. Doherty.

20            Mr. Shumofsky, anything on this that you want to

21    tell me?  And I know we still have to double back to the

22    phone.

23            MR. SHUMOFSKY:  Yes, Your Honor.  I mean, the

24    topics kind of overlap on one another.

25            THE COURT:  Right.

|Hearing
|23-cv-16873, October 2, 2024

1          MR. SHUMOFSKY:  Focusing on the motion to withdraw,

2   which Your Honor's inquired about -- obviously, to the extent

3   that this motion is still pending, Your Honor's ultimately

4   going to rule on it at some point or opposing counsel's firm

5   may come to a different determination based on the

6   relationship with Mr. Danis.

7          We wanted to flag for the Court obviously, this is

8   a unique circumstance insofar as, if Mr. Danis does not have

9   counsel and he ends up not getting other counsel -- because,

10  despite what Mr. Danis said today, there were representations

11  that he wasn't paying, so if that's an issue, he can't get

12  new counsel, there is the issue of pro se, and there's

13  "attorney-client eyes only" issues.

14         So before the Court would ever rule on any motion

15  going forward, we'd like an opportunity to discuss how to

16  address that because we'd want to change the confidentiality

17  order, and we'd have to address those types of things, could

18  be a unique circumstance.

19         THE COURT:  Right.

20         MR. SHUMOFSKY:  Putting that aside, the observation

21  is, besides the money issue, Mr. Berman, who we -- Your Honor

22  has said, we have no reason to think he's not representing

23  earnestly to the Court.  He was here yesterday.  He didn't

24  say anything about the phone being available.  He said there

25  was a breakdown also of communications.  Mr. Danis is

 1    appearing today and saying, oh, I filled out all the answers

 2    to all the things that the Court wanted, despite not

 3    complying with the order.

 4          So either Mr. Danis is not representing things

 5    accurately and Mr. Berman's deliberately ignoring your order

 6    despite what his client did, or something else is happening

 7    here, which is very troubling to hear all that.

 8          And putting aside the motion to withdraw issue,

 9    this was a continuation of yesterday's hearing.  And

10    yesterday's hearing had two issues:  one, the motion to

11    withdraw; and then there's the issue of your Court did want

12    to explore without prejudice to any ability to oppose it next

13    week, the issues with respect to disposition of the phone.

14          So they're all kind of wrapped up in one another --

15          THE COURT:  They overlap.  That's for sure.

16          MR. SHUMOFSKY:  So it's -- I lay those things out

17    for further exploration because it's tough for plaintiff's

18    counsel to figure out exactly how to navigate between certain

19    ones and represent next week at a deposition where we expect

20    the other issues, absent further inquiry from defendant.

21    It's tough to take a firm position because it's a very moving

22    target right now.

23          THE COURT:  Fair enough.

24          And there are a bunch of moving pieces.

25          I have to say, Mr. Doherty, it wasn't my intention

|Hearing
|23-cv-16873, October 2, 2024

 1  today -- and I discussed this with counsel yesterday -- to

 2  question Mr. Danis about the phone.  Obviously, the phone's

 3  been the subject, particularly in the last month and a half

 4  or two months, of considerable efforts by the parties and the

 5  Court to just understand the status of the phone, the status

 6  of the text messages.

 7          And -- I'm sorry.  I am not trying to be rude.  I

 8  want to just pull up the docket.

 9          So my understanding had been, based on

10  Mr. Berman's -- let me backtrack.

11          August 20th, the defense told plaintiff that

12  Mr. Danis's cell phone had, quote/unquote, died.

13  Apparently -- I don't know whether it had gotten fried during

14  charging, whatever.

15          And because of that and because Mr. Danis didn't

16  have that phone backed up, there were no longer any text

17  messages for the relevant time period.

18          At that point, though, Mr. Berman said that he had

19  personally searched Mr. Danis's cell phone and iCloud for

20  messages, but there were basically no retrievable text

21  messages.

22          On August 27th, we had a conference where

23  Mr. Berman represented that the old phone still exists and

24  that Mr. Danis has it.

25          And so I issued an order that Mr. Danis was to give

|Hearing
|23-cv-16873, October 2, 2024

```
 1  Mr. Berman the cell phone.  That's the August 27th, 2024,

 2  order.  That's again, August 27th.

 3          And then August 30th, Mr. Berman tells us that

 4  Mr. Danis can't find the phone, the old phone.  And then I

 5  issued -- I did a text order or a series of text orders that

 6  basically said, Mr. Danis must look for the phone and I want

 7  a status report by September 10th and if the phone is not

 8  found, a declaration from Mr. Danis about various questions

 9  about the old phone.

10          I didn't get that.  And so the next day,

11  September 11th, I issued another order pointing out that I

12  still hadn't gotten the status report and declaration from

13  Mr. Danis.  And so I ordered that to be filed by close of

14  business on September 11th.

15          I still haven't gotten the status report and

16  declaration.

17          Instead, what I got on September 12th was

18  Mr. Berman's motion to withdraw, which, of course led to the

19  text order for the conference yesterday.

20          So for at least the last month or so, we've all

21  been operating under the impression, that contrary to

22  Mr. Berman's representation on September 27th -- sorry --

23  August 27th -- that Mr. Danis had the phone, based on what

24  Mr. Berman told us on August 30th, that he didn't have the

25  phone.
```

|Hearing
|23-cv-16873, October 2, 2024

1        I'd be remiss if I didn't mention the fact that the

2   phone was sort of there on August 27th and not there on

3   August 30th struck me as suspicious.

4        But I understand now that notwithstanding this

5   entire rigamarole that -- for lack of a better word -- that

6   the Court's had to go through, that plaintiff's counsel's had

7   to go with through, Mr. Danis has had that phone all along?

8        MR. DOHERTY:  So the short answer is I don't know.

9   I can assure the Court that Mr. Berman was inquiring to

10  Mr. Danis and attempting to comply with the Court's

11  directives.

12       THE COURT:  Right.  Look, I've known Mr. Berman for

13  quite some period of time.  And whatever the disagreements or

14  issues between he and Mr. Danis, Mr. Berman has always been

15  nothing but an upstanding, straightforward advocate.  So this

16  is all in that context.

17       I am not -- I am not questioning for one moment

18  Mr. Berman's good-faith representations to the Court.

19       But there's clearly either some sort of

20  miscommunication or misunderstanding here.

21       MR. DOHERTY:  Based on what you just read, I would

22  agree with that.  But I can't say that I've been involved in

23  the specific details that the Court is addressing right now.

24       THE COURT:  Can I ask you to do -- because I do see

25  that Mr. Danis wants to speak.

|Hearing
|23-cv-16873, October 2, 2024

1           But I think the better way to proceed, for purposes

2    of avoiding any further confusion and, frankly, for

3    Mr. Danis's own best interests, I would ask you -- and you

4    can use the jury conference room, if you want -- have a

5    conversation with Mr. Danis right now about what is the

6    status of the old phone?  All right?  Does he have it?  If he

7    does have it, then is it on him?  Because, if so, consistent

8    with my order going all the way back to August 27th, he must

9    give that to you.  If he doesn't have it -- if he doesn't --

10   if he has it -- if Mr. Danis has it at home, then he has to

11   get that to you by close of business tomorrow.  All right?

12   And if he doesn't have it, then at least you can tell us

13   that, because I do think in the interests of fairness to all

14   parties and so that we're not chasing our tails

15   meaninglessly, the Court and plaintiff should have an

16   understanding of that before we leave here today.

17           So do you mind taking whatever time you need but,

18   say, 10, 15 minutes -- you can have the jury conference room.

19           Antonio, we'll go off the record.  And we'll see if

20   you're ready again at quarter of?

21           MR. DOHERTY:  Very good, Judge.  I'll alert your

22   clerk as soon as we're ready.

23           THE COURT:  All right.

24           Mr. Shumofsky, does that make sense to you?

25           MR. SHUMOFSKY:  Yes, Your Honor.

1            THE COURT:  All right.  I'll see you folks in 15

2   minutes.

3        (Recess)

4            THE COURT:  All right.

5            So, Mr. Doherty, what's the status with the phone?

6            MR. DOHERTY:  Judge, he -- Mr. Danis does, in fact,

7   have --

8            THE COURT:  He does.

9            MR. DOHERTY:  -- what I'll refer to as his old

10  phone.

11           THE COURT:  Right.

12           MR. DOHERTY:  He tells me that that phone cannot be

13  accessed, but he's going to deliver it to my office by the

14  close of business tomorrow.  We will, obviously, safeguard

15  the phone, take a look at it, and work with opposing counsel

16  to figure out the best way to see if there's anything to

17  discover on that phone.

18           THE COURT:  I assume plaintiff is going to want to

19  do a forensic analysis of it?

20           MR. SHUMOFSKY:  Yes, Your Honor.  In fact, we would

21  ask to be able to take possession of the phone and send it

22  right to a forensic analyst at our expense, and we can work

23  with opposing counsel with respect to how that's done or if

24  there's any privileged information.  But, otherwise, we might

25  be getting --

|Hearing
|23-cv-16873, October 2, 2024

1          THE COURT:  There shouldn't be because there are

2     no -- shouldn't be any communications on it, according to

3     Mr. Danis.

4          But, yeah, I mean, maybe use a filter team or some

5     way of making sure that trial counsel are not privy to any

6     privileged communications.

7          Is there any -- I mean, Mr. Berman had actually

8     offered it, back at the October [sic] 27th hearing.  He said,

9     "My understanding is the phone still exists, so if somebody

10     wants to have it examined, that's possible.  It hasn't been

11     discarded."

12          I would be inclined to grant plaintiff's

13     application, Mr. Doherty, unless you have any objection.

14          MR. DOHERTY:  Judge, I think just to the point that

15     you made, I would appreciate my firm getting the phone

16     tomorrow just so that we can take a quick look at it and make

17     sure there's no privileged communications.

18          And I have no issue turning it over to plaintiff's

19     counsel.

20          THE COURT:  All right.  Terrific.

21          MR. DOHERTY:  And if I could just double back

22     and --

23          THE COURT:  Yeah, go ahead.

24          MR. DOHERTY:  -- clarify one thing for the record.

25          So in Mr. Berman's August 27 letter to the Court

```
 1   wherein he said he had looked at the phone.

 2              THE COURT:  Yeah.

 3              MR. DOHERTY:  What he was talking about was

 4   Mr. Danis's current phone or the --

 5              THE COURT:  That would actually make sense --

 6              MR. DOHERTY:  -- the new phone, for lack of a

 7   better term.

 8              THE COURT:  Right.  Right.  Because previously --

 9   that would make sense.  That would make sense, because if

10   the -- old phone has always been inaccessible, then there's

11   no way that he could have looked at old phone.  So, okay,

12   fair enough.

13              All right.  So just to recap, the parties will work

14   out -- Mr. Danis will get the phone to Mr. Doherty and

15   Hartmann Doherty by close of business today.

16              The parties will work out the turning over of that

17   phone to plaintiff's counsel.

18              The deposition will go forward on October 8th.

19              And then maybe what we'll do is reconvene for a

20   status conference before the end of October to take up the

21   issue of the motion to withdraw.

22              Is that fair?

23              MR. DOHERTY:  Very good, Judge.

24              THE COURT:  Mr. Shumofsky?

25              MR. SHUMOFSKY:  That makes sense, Judge.
```

1         Just for a point of clarification, I think

2    Your Honor just said that it should be turned over by close

3    of business today.

4         THE COURT:  No, to Mr. Doherty.

5         MR. SHUMOFSKY:  Right.  Right.  Originally I

6    thought you said tomorrow.

7         So I just wanted to make sure that we were --

8         THE COURT:  No, I was thinking -- but they

9    offered -- then Mr. Doherty said that Mr. Danis is going to

10   get it today.  So --

11        MR. SHUMOFSKY:  Fine, Your Honor.

12        THE COURT:  -- don't need to delay.

13        MR. SHUMOFSKY:  The -- I think that resolves

14   certain issues.

15        We would ask whether it's because of Mr. Danis's

16   contempt of Your Honor's several orders, but we would like

17   a -- to make an oral application right now and if not, we

18   can -- for attorney's fees with respect to chasing after the

19   phone for the last month.  It seems to be a colossal waste of

20   time, including the Court's.

21        THE COURT:  Can I offer something on that?

22        MR. SHUMOFSKY:  Yup.

23        THE COURT:  That's going to be part of -- what

24   you're essentially going to be arguing -- and I don't want to

25   presage your argument for you, but it's either going to be a

|Hearing
|23-cv-16873, October 2, 2024

1  withholding argument under Rule 37 -- Rule 37(c) -- hold on.

2  Sorry.  Yeah, it's either going to be a Rule -- I assume it's

3  going to be in the nature of a Rule 37(c) motion for

4  sanctions for failing to disclose, supplement an earlier

5  response or to admit, which essentially serves -- or, I

6  suppose, (D), failure to respond to a request for inspection

7  because of the protracted nature of what's gone on.

8           I get that.

9           All I'm say -- I guess what I want to avoid is

10 having to do this either piecemeal or duplicatively, because

11 you're going to take the deposition of Mr. Danis specific to

12 a number of these issues on Tuesday; right?  I think

13 especially for something like this, it's a fact-intensive

14 analysis.  Everybody and certainly I am going to need as

15 complete a record as possible.

16          So I understand that the issue is still

17 percolating.  I am not blind to it.

18          But I think it would be premature to raise this now

19 because you're still taking discovery on what happened with

20 the phone and the text messages.  Right?

21          MR. SHUMOFSKY:  Your Honor, that makes sense.  I

22 mean, there seems to be, you know, a two -- two issues that

23 getting more information would be helpful.  One is --

24          THE COURT:  Yeah.

25          MR. SHUMOFSKY:  -- potentially preservation-related

|Hearing
|23-cv-16873, October 2, 2024

1   issues, which is separate to the fact that plaintiff has

2   wasted time, you know, over the last month chasing after

3   that --

4           THE COURT:  Right.  It could be theoretically -- if

5   I understand your position -- I am not endorsing it.  I'm

6   just trying to think my way through it.  There's a potential

7   spoliation issue, and there's also a failure to produce,

8   withholding issue.

9           Again, I don't know that there has been spoliation.

10  I am not going to prejudge the issue.

11          I'll want to hear from both sides about that.  But

12  I'd rather do it all at once, rather than piecemeal, and on a

13  full record.

14          So that's why I think maybe what we do is let's get

15  the deposition done.  I have to assume that Hartmann Doherty

16  is still going to seek to be relieved.  Maybe they won't

17  after they speak further with Mr. Danis.  I'm going to have

18  to hear from them on that.  And we'll also discuss the

19  possible sanctions motion if plaintiff still wants to make it

20  and the time frame for that.  It's going to be really a time

21  frame/sequencing issue.

22          MR. SHUMOFSKY:  That makes sense, Your Honor.

23          With respect to Tuesday, if we get more specificity

24  and guidance from the Court about what the scope is of the

25  deposition so we know going in -- we certainly had a sense

1    that we're going to be asking about the phone and discovery,

2    et cetera.

3          But to the extent that, you know -- obviously,

4    there would be a separate substantive deposition about the

5    facts of this case.

6          THE COURT:  Yeah.

7          MR. SHUMOFSKY:  Wanted to make sure if there's any

8    more we should be discussing now in advance of Tuesday to

9    sort of, you know, head off any potential issues that comes

10   up with respect to not answering certain questions or he will

11   answer questions.

12         THE COURT:  Well, look, a couple of things.  One,

13   if there are any issues about the scope or disputes -- and

14   I'll offer this to both sides; I think it was in the

15   scheduling order too because this is in all my scheduling

16   orders -- and there's a -- and I do it for the parties so

17   that you're not spending a whole bunch of money and time on

18   stuff that would be more efficiently resolved.  If there is a

19   dispute at the deposition, an instruction not to answer or

20   something like that, call me from the deposition.  Okay?

21   I'll always answer.  If I'm on the bench, I'll get back to

22   you as soon as I get off the bench.  And that way we don't

23   have to do the same deposition multiple times or we get into

24   these sort of letter-writing changes where everybody wants to

25   have the last word.

|Hearing
|23-cv-16873, October 2, 2024

1      You folks can call me from the deposition.

2  Mr. Danis, who's the witness, will step out.  I'll hear from

3  each side.  I'll rule.  And you can get the whole discovery

4  deposition done on Tuesday and try and at least keep some

5  costs down.

6      In terms of the scope, I think we've already

7  addressed that; right?  It's going to be the text -- the

8  discovery-related -- specific subject matter:  the text

9  messages; the not backing up the phone; the confusion about

10 the old phone, what happened with the old phone.

11      And I understand you're going to be taking this

12 deposition before you've had a forensic examination of it,

13 but, you know, we operate in an imperfect world; right?

14      So that will be the subject matter.

15      I don't know what else today I can really cover to

16 lend any more specificity or clarity.

17      Mr. Doherty, it looked like you had something you

18 want to say.

19      MR. DOHERTY:  Yes, Judge, if I said that I was

20 going to get the phone from Mr. Danis today, I misspoke.  If

21 the Court would indulge me and allow Mr. Danis to give me the

22 phone tomorrow, I would appreciate it.

23      THE COURT:  All right.  By close of business

24 tomorrow and no later.  Okay?

25      MR. DOHERTY:  By close of business tomorrow.  Thank

|Hearing
|23-cv-16873, October 2, 2024

1   you.

2          MR. SHUMOFSKY:  With respect to that, Your Honor,

3   can we have opposing counsel file something one way or the

4   other at close of business tomorrow, not -- not the next

5   morning --

6          THE COURT:  Because I feel so involved in this,

7   yeah, I'd like a confirmation letter, if you don't mind,

8   Mr. Doherty, that once the phone has been turned over, Judge,

9   this will confirm, as we discussed at the conference

10  yesterday, I and my firm has now taken possession of the old

11  cell phone from Mr. Danis.

12         And file that on the record so you have visibility

13  too.

14         MR. SHUMOFSKY:  Thank you, Your Honor.

15         And, finally, with respect to that, considering the

16  journey we've been over the last month about this --

17         THE COURT:  Right.

18         MR. SHUMOFSKY:  -- you know, I'm, frankly -- we're

19  skeptical of whether or not the phone will actually appear

20  and this actually will happen tomorrow.

21         But with respect to that, one thing --

22         THE COURT:  Well, I want -- let me stop you right

23  there.

24         Look, and I am not going to prejudge the issue, but

25  if after everything we've been through concerning the phone,

1  if the phone is not in Mr. Doherty's or Mr. Berman's or the

2  Hartmann Doherty's hands tomorrow by 5:00 o'clock, I'm going

3  to be really, really, really unhappy.  And there will be

4  consequences to that.  All right?  I don't want to go down

5  that road because that stuff doesn't advance the ball.  It

6  just makes everything more complicated, more expensive.  It's

7  a colossal waste of time that none of us has to waste.  All

8  right?

9          So let's just get the phone turned over.

10          But if it's not, there are going to be serious

11  consequences to that.  I don't know -- like I say, I don't

12  want to belabor the point.

13          MR. SHUMOFSKY:  Yes, Your Honor.  I appreciate all

14  that.

15          And just to press the issue just a little further,

16  if there's anything else that needs to be raised -- because

17  one thing that has come up over the last month is the fact

18  that the issue has been that Mr. Danis doesn't appreciate the

19  significance of all this, and he's not sophisticated --

20          THE COURT:  Well, I don't know what Mr. Danis

21  appreciates or doesn't appreciate.

22          But I think -- look, I don't know what else I could

23  possibly say today.  I think we all know where we stand.  If

24  there's any confusion about that, Mr. Doherty, Mr. Berman

25  still represent Mr. Danis.  They're more than capable of

|Hearing
|23-cv-16873, October 2, 2024

1    explaining it to him.

2              But I don't want to presuppose or prejudge what

3    Mr. Danis does or doesn't understand or takes seriously.

4    We've been very clear.  He's clearly -- Mr. Danis is

5    articulate.  He understands, I think, what I've said.

6              I don't know what else I can say.

7              MR. SHUMOFSKY:  Thank you, Your Honor.

8              THE COURT:  All right.  And we'll push out a date

9    for a conference call before -- we'll try and do it before

10   the end of October.  My schedule right now is just beyond

11   full.

12             But we'll find us some time, and we'll push out a

13   date for that.  Okay?

14             MR. DOHERTY:  Very good.  Thank you, Judge.

15             THE COURT:  All right.  Any other questions?

16   Anything else we can run to ground today?

17             MR. SHUMOFSKY:  No.  Thank you for the Court's

18   time.

19             THE COURT:  All right.  All right.  Be well.  All

20   right?  Have a good afternoon.

21                     (Conclusion of proceedings)

22

23

24

25

|Hearing
|23-cv-16873, October 2, 2024
|Certification

27

```
 1                        Certification

 2        I, SARA L. KERN, Transcriptionist, do hereby certify

 3   that the 27 pages contained herein constitute a full, true,

 4   and accurate transcript from the official electronic

 5   recording of the proceedings had in the above-entitled

 6   matter; that research was performed on the spelling of proper

 7   names and utilizing the information provided, but that in

 8   many cases the spellings were educated guesses; that the

 9   transcript was prepared by me or under my direction and was

10   done to the best of my skill and ability.

11        I further certify that I am in no way related to any of

12   the parties hereto nor am I in any way interested in the

13   outcome hereof.

14

15

16

17

18   s/ Sara L. Kern                          4th of October, 2024

19   _____   _____
     Signature of Approved Transcriber             Date

20

21
     Sara L. Kern, CET**D-338
22   King Transcription Services, LLC
     3 South Corporate Drive, Suite 203
23   Riverdale, NJ  07457
     (973) 237-6080
24

25
```