UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| NINA AGDAL,<br><br>   Plaintiff,<br><br>v.<br><br>DILLON DANIS,<br><br>   Defendant. | Civil Action No. 23-16873 (MCA) (MAH)<br><br><br><br>ORDER |

  This matter having come before the Court by way of the parties' joint letter, in which Plaintiff, Nina Agdal, requests that the Court order Defendant, Dillon Danis, to pay the expenses associated with completing a forensic examination of Mr. Danis's cellphone to confirm whether the data thereon is unrecoverable, as a precursor to Plaintiff filing a motion for spoliation sanctions under Federal Rule of Civil Procedure 37, D.E. 88;[1]

---

[1] This matter has a fairly extensive procedural history, punctuated by a series of discovery disputes. Given the parties' familiarity with the record, the Court will address only those disputes as necessary to resolve the instant dispute.

On July 11, 2024, following Defendant's continued noncompliance with Plaintiff's discovery requests and this Court's Orders, the Undersigned held an in-person hearing. At that hearing, Defendant's noncompliance with his discovery obligations was addressed at length. Following the hearing, the Undersigned entered an Order denying without prejudice Plaintiff's request that the Court impose sanctions. Order, July 11, 2024, D.E. 63. That Order required that by August 18, 2024, "Defendant, with the assistance of counsel, shall search for and produce all responsive materials, as well as all of Defendant's communications regarding either Plaintiff's image or the posting of Plaintiff's image on social media." *Id.* at 1. That Order also required Defendant to certify and outline the efforts expended in that search. *Id.* at 1-2.

On August 23, 2024, Plaintiff informed the Court that Defendant revealed that his cellphone had been permanently damaged and there were no retrievable text messages from the phone. Pl.'s Letter, D.E. 66. Plaintiff thereafter renewed her request for sanctions. *Id.* Defendant responded and represented to the Court that Defendant had complied with the Court's July 11, 2024 Order. Def.'s Letter, Aug, 26, 2024, D.E. 67. On August 27, 2024, this Court denied Plaintiff's

1

and Defendant Dillon Danis having objected to Plaintiff's request, *id.*;

---

renewed request that the Court require Defendant to engage, at his own expense, the services of a forensic vendor to determine whether the text messages were recoverable. Order, Aug, 27, 2024, D.E. 68. The Court ordered that on or before August 29, 2024, Mr. Danis provide his counsel with the damaged cellphone. *Id.* On August 30, 2024, Defendant represented to the Court that he was unable to locate his cellphone. Def.'s Letter, D.E. 69. On September 3, 2024, the Court directed Defendant to continue to search for the cellphone and provide a status report concerning the search by September 10, 2024. Order, D.E. 70. Further, the Court required Defendant to include in the status report a declaration by Mr. Danis that described in detail: (1) all efforts undertaken to search for the phone and, if more than one person looked for the phone, the specific efforts by each such person to locate it, (2) the last time Mr. Danis remembers having the phone, (3) the location where Mr. Danis typically kept or stored the phone, (4) Mr. Danis's best recollection of what he did with the phone the last time he remembers having possession of it, and (5) Mr. Danis's best understanding of what happened to the phone. *Id.* Defendant failed to file a status report by September 10, 2024. *See* Order, Sept. 11, 2024, D.E. 73.

Thereafter, Defendant's counsel filed a motion for leave to withdraw as counsel. Mot. for Leave to Withdraw as Counsel, D.E. 74. Plaintiff replied to the motion and stated that although she took no position on the motion to withdraw, before any ruling on the motion, the Court should hold a conference to assess the circumstances of the motion and whether Mr. Danis intended to engage counsel. Pl.'s Letter, Sept. 12, 2024, D.E. 75.

On October 1, 2024, the Undersigned held an in-person conference to address defense counsel's motion to withdraw. Defendant failed to appear for the conference. Order, Oct. 1, 2024, D.E. 82. The Undersigned ordered that the conference would resume at 9:00 a.m. on October 2, 2024, and that Defendant must appear in person at the conference. *Id.* Defendant appeared for that conference. He informed the Court that he did still have the old cellphone. Based on Defendant's representations, the Undersigned ordered that: (i) Mr. Danis turn over his old cellphone to his attorneys, (ii) Defense Counsel and Plaintiff's counsel arrange for the delivery of the old cellphone to Plaintiff's counsel, and (iii) that the previously scheduled October 8, 2024 deposition of Mr. Danis regarding Defendant's discovery efforts was to proceed as scheduled. Order, Oct. 2, 2024, D.E. 83. Defense counsel later withdrew the motion for leave to withdraw as counsel. Def.'s Letter, Oct. 16, 2024, D.E. 86.

Finally, on December 4, 2024, the parties submitted the joint letter at issue in this Order. *See* Joint Letter, D.E. 88.

2

and Plaintiff having argued that she has already incurred $5,000 in forensic expenses and it would be unjust for Plaintiff to bear any additional expenses associated with the forensic examination, *id.* at 1;[2]

and Plaintiff having argued that Defendant's repeated and dilatory discovery misconduct has frustrated the prosecution of this case, *id.* at 2;[3]

---

[2] Plaintiff argues that during Defendant's October 8, 2024 Deposition, Mr. Danis provided an implausible explanation for the damage to the cellphone. *See* Joint Letter, Dec. 4, 2024, D.E. 88. According to Plaintiff, Mr. Danis testified that he took the cellphone into a sauna and when he tried to charge the phone afterward, it broke. *Id.* at 3. Plaintiff's forensic examiner also concluded that it is highly unlikely that the phone was broken in that manner. Declaration of Erik Rasmussen, Ex. A to Joint Letter, D.E. 88 ("Rasmussen Decl."), at 9-10, ¶¶8-12. Plaintiff's forensic expert posits there are additional measures he can attempt to try and repair the damaged components of the cellphone. *Id.* at 10, ¶ 13. And, if the phone is restored, there might be additional information about what led to the phone breaking. *Id.* According to Plaintiff, the estimated cost of the additional forensic examination would be between $16,200 and $23,500. *Id.* at 1. Plaintiff argues that the additional work would definitively answer whether the subject electronically stored information is recoverable and would serve as a precursor to bringing a motion for spoliation sanctions under Federal Rule of Civil Procedure Rule 37. *Id.* at 1-3. Plaintiff asserts that given Defendant's "obstruction in discovery to date, Defendant's culpability in causing the incapacitation of the phone (which an initial assessment determined was likely intentional), and the fact that Plaintiff has already incurred over $5,000 in forensic expenses," the Court should order Defendant bear the cost of the additional costs associated with the forensic examination. *Id.* at 3.

[3] Mr. Danis has not been diligent in satisfying his discovery obligations. After this Court entered its July 11, 2024 Order, requiring Defendant search and produce all responsive materials "regarding either Plaintiff's image or the posting of Plaintiff's image on social media," D.E. 63, Defendant produced his X archive data and analytic information, two WhatsApp message threads, and approximately 130 photos/videos of Plaintiff that had been stored on Defendant's cellphone. *See* Pl.'s Letter, Aug, 23, 2024, D.E. 66. Plaintiff objected to Defendant's production and took issue with the fact that Defendant had not produced text messages. Plaintiff contended that the absence of any relevant text messages was inconsistent with what discovery had shown to date. *See id.*

Based on the parties' respective submissions, Mr. Danis only informed his counsel in August 2024, that his phone was missing and broken since January 2024. *See* Pl.'s Letter, Aug, 23, 2024, D.E. 66. Then, at the October 2, 2024 conference, Mr. Danis informed the Court that he had apparently found the phone and confirmed that it was broken. *See* Order, Oct. 3, 2024, D.E. 83. Thus, the Court ordered Mr. Danis relinquish the phone to Plaintiff's counsel. *Id.* Plaintiff

3

and it therefore appearing that Plaintiff's request that Defendant pay the costs associated with completing a forensic examination of the cellphone is predicated on an asserted violation of Federal Rule of Civil Procedure 37;[4]

---

deposed Mr. Danis on October 8, 2024. The deposition concerned Mr. Danis's discovery efforts and the circumstances surrounding the broken cellphone. *See* Joint Letter, D.E. 88, at 2. According to Plaintiff's submission, Mr. Danis testified that he brought the cellphone into a sauna and tried to charge it. *Id.*

Plaintiff hired a forensic examiner to conduct an initial examination of the phone. *Id.* at 2. According to Plaintiff's forensic examiner, there were no obvious signs of tampering from the phone's exterior. Rasmussen Decl., at 9, ¶ 8. However, there was corrosion in the interior of the phone, which would mean Mr. Danis's phone was subjected to extreme conditions. *Id.* at 9, ¶ 9. Further, the forensic examiner determined that the damage found within the phone is inconsistent with Mr. Danis's testimony. *Id.* at 9, ¶ 10.

[4] It is unclear from the December 4, 2024 submission whether Plaintiff bases her request in an assertion of spoliation, or a violation of Federal Rule of Civil Procedure 37(e), which addresses a failure to preserve electronically stored information. It is well settled that spoliation refers to the alteration, destruction, or failure to produce evidence relevant to an issue in a case. *Bull v. United Parcel Serv., Inc.*, 665 F.3d 68, 73 (3d Cir. 2012); *Castellani v. City of Atlantic City*, No. 13-5848, 2016 WL 7155826, at *3 (D.N.J. Sept. 15, 2016). In determining whether a party engaged in spoliation, courts consider four factors: (1) whether the spoliated evidence was in the accused party's possession or control; (2) the relevance of the evidence to the litigation; (3) whether the accused party actually suppressed or destroyed the evidence; and (4) whether the accused party had a duty to preserve the evidence. *Bull*, 665 F.3d at 73; *Kuhar v. Petzl Co.*, No. 16-0395, 2018 WL 6363747, at *5 (D.N.J. Nov. 16, 2018). Spoliation requires "a showing of intent apart from establishing the alleged conduct as a matter of fact." *Masterank Wax, Inc. v. RFC Container, LLC*, No. 19-12245, 2022 WL 19927891, at *5 (D.N.J. Aug. 30, 2022) (citing *Bull*, 554 F.3d at 79). "To be clear, therefore, the mere destruction or loss of evidence in and of itself does not make out a claim for actionable spoliation; more must be shown." *Kuhar*, 2018 WL 6363747, at *5. Accordingly, it is not enough that a party prove that evidence was destroyed or withheld because of ordinary negligence. *Id.* (quoting *Lucia v. McClain & Co., Inc.*, No. 11-930, 2013 WL 4517976, at *16 (D.N.J. Aug. 23, 2013)). Nor is it enough to show that the evidence was destroyed in the usual course of business, or as a matter of routine. *Van De Wiele v. ACME Supermarkets*, No. 13-5924, 2015 WL 4508376, at *4 (D.N.J. July 24, 2015) (collecting cases); *McCann v. Kennedy Univ. Hosp., Inc.*, No. 12-1535, 2014 WL 282693, at *7 (D.N.J. Jan. 24, 2014) (finding no bad faith where the defendant's video system automatically overwrote its recordings after three weeks, and litigation was not foreseeable).

By contrast, under Rule 37(e),

and Defendant having argued that there is no evidence that the cellphone will contain discoverable information that has not already been produced, *id.* at 4-5;[5]

---

> (e) Failure to Preserve Electronically Stored Information. If electronically stored information that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery, the court:
>
>> (1) upon finding prejudice to another party from loss of the information, may order measures no greater than necessary to cure the prejudice; or
>>
>> (2) only upon finding that the party acted with the intent to deprive another party of the information's use in the litigation may:
>>
>>> (A) presume that the lost information was unfavorable to the party;
>>>
>>> (B) instruct the jury that it may or must presume the information was unfavorable to the party; or
>>>
>>> (C) dismiss the action or enter a default judgment.

The 2015 Advisory Committee Notes to Rule 37(e) explain that Rule 37(e) "applies only if the information was lost because the party failed to take reasonable steps to preserve the information. . . . Because the rule calls only for reasonable steps to preserve, it is inapplicable when the loss of information occurs despite the party's reasonable steps to preserve." Additionally, "[b]ecause electronically stored information often exists in multiple locations," *id.*, "spoliation occurs only where the information is truly lost and not recoverable elsewhere." *Bistrian v. Levi*, 448 F. Supp. 3d 454, 464-65 (E.D. Pa. 2020).

[5]  Defendant contends that the lawsuit concerns the posting of a photograph on X and that discovery has established that Defendant's primary means of communication was messaging via X, WhatsApp, and Facebook.  Joint Letter, D.E. 88, at 4-5.  Defendant asserts that he has provided all of his X, WhatsApp, and Facebook messaging. *Id.* at 5.  Further, Plaintiff has been provided text messages from third parties, none of which suggests that Defendant's phone contains evidence that Plaintiff has not received or were destroyed. *Id.*

and Defendant having further argued that a request to shift the cost of the additional forensic examination would be premature, *id.* at 5;[6]

and the Court having considered the instant request without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1;

and the Court finding that, at this juncture, Plaintiff has not established a basis to require Defendant to pay the expenses associated with a forensic examination of Defendant's cellphone as a precursor to a motion for sanctions for spoliation or a violation of Rule 37(e), because Plaintiff has not established that the Defendant actually suppressed, destroyed or withheld discoverable material;[7]

---

[6] Defendant asserts that at least in the first instance, Plaintiff should continue to incur the expense of any forensic examination of the phone. Joint Letter, D.E. 88, at 5.

[7] Plaintiff has not presented the Court with sufficient evidence to established that the cellphone contains discoverable material that has not already been produced in this litigation, or that the data is unrecoverable. Similarly, Plaintiff has not presented sufficient evidence to establish that Defendant intentionally destroyed his phone to prevent files in the phone from being discovered. It is axiomatic that whether the application is for spoliation, or pursuant to Rule 37(e), the material in question must be "truly lost and not recoverable elsewhere." *Bistrian*, 448 F. Supp. 3d at 464-65. Plaintiff's application would require the Court to assume that the cellphone contains data that has not been produced in discovery. Plaintiff has not yet established that fact and, indeed, seeks the forensic examination to determine whether the relevant data on the cellphone is unique, as well as whether it is recoverable. To be clear, the Court does not discount the possibility that Defendant sought to destroy the data on the phone, or that the data might not be recoverable. If so, Plaintiff may file a motion for sanctions at the appropriate time. But the evidence at this point is insufficient to reach a reliable conclusion as to the foregoing issues. Plaintiff provides only her forensic examiner's declaration and asserts that Defendant's past dilatory discovery misconduct necessitate an order requiring him to pay for the additional forensic examination. In short, Plaintiff posits that Defendant's past failures to comply with his discovery obligations, coupled with the Rasmussen Declaration, compel the conclusion that he engaged in spoliation or a failure to preserve ESI concerning the cellphone. But although the Rasmussen Declaration opines that the cellphone was exposed to water damage, as opposed to damage from a sauna, there is insufficient evidence that the cellphone contains unique discoverable material, or that the data is unrecoverable to sustain a finding of either spoliation or a violation of Rule 37(e). The evidence is similarly insufficient to establish that Defendant acted with the requisite intent to sustain a finding of spoliation. In short, Plaintiff seeks to put the

and Plaintiff not having established good cause for the relief requested;

**IT IS ON THIS 4th day of February 2025,**

**ORDERED** that Plaintiff's request for sanctions under Federal Rule of Civil Procedure Rule 37, D.E. 88, is **DENIED** without prejudice.

*s/Michael A. Hammer*
**Hon. Michael A. Hammer, U.S.M.J.**

---

proverbial cart before the horse, in that she seeks a determination of spoliation or withholding to compel Defendant to pay for the forensic examination, without adequate evidence of spoliation or withholding under Rule 37(e).

Plaintiff relies upon three cases in her submission, but these cases are readily distinguishable. Joint Letter, D.E. 88, at 3-4.  Common among each of the cases is that, at minimum, there was direct evidence that a party had intentionally destroyed and/or spoliated electronically stored information.  In *TLS Management and Marketing Services, LLC*, the defendant "readily admit[ted] that he discarded the laptop in November 2015 because it was 'malfunctioning.' And he similarly admits to deleting the contends of his external hard drive after transferring the data therein to a USB flash drive that he provided to the attorney representing him in this litigation." *TLS Mgmt. & Mktg. Servs. LLC v. Rodriguez-Toledo*, No. 15-2121, 2017 WL 1155743, at *1 (D.P.R. Mar. 27, 2017).  In *ShowCoat Solutions, LLC*, the plaintiff cited the depositions of two defendants to establish that one defendant "traded in his cell phone," which effectively destroyed the date contained in the phone, with the knowledge and approval of the other defendant. *ShowCoat Sols., LLC v. Butler*, 2019 WL 3332617, at *5 (M.D. Ala. June 7, 2019), *Report and Recommendation adopted*, 2019 WL 3560081 (M.D. Ala. Aug. 5, 2019).  And in *AMG National Trust Bank*, the court found that based on the documentary submissions by the parties and the testimony presented at a separate hearing, there was sufficient evidence showing that the defendant purposely deleted files to prevent their discovery. *AMG Nat'l Tr. Bank v. Ries*, 2011 WL 3099629, at *3, 5 (E.D. Pa. July 22, 2011).

Plaintiff has not presented such direct evidence of spoliation, destruction, or withholding at this juncture.  It is not even clear whether the cellphone contains discoverable material that has not already been produced.  If Plaintiff decides to order a full forensic examination and can thereafter show that the cellphone contains unique discoverable material, and that Mr. Danis intentionally destroyed the phone, or otherwise deprived Plaintiff of its relevant contents, Plaintiff may file a motion for sanctions regarding any evidence Mr. Danis may have withheld or destroyed.