# Sills Cummis & Gross
### A Professional Corporation

**The Legal Center**
**One Riverfront Plaza**
**Newark, New Jersey 07102**
**Tel: (973) 643-7000**
**Fax (973) 643-6500**

101 Park Avenue
28th Floor
New York, NY 10178
Tel: (212) 643-7000
Fax: (212) 643-6500

**Joseph B. Shumofsky**
**Member**
**Admitted In NJ, NY**
**Direct Dial:  973-643-5382**
**Email:**
**jshumofsky@sillscummis.com**

222 Lakeview Avenue, Suite 800
West Palm Beach, FL 33401
Tel: (561) 693-0440
Fax: (561) 828-0142

April 23, 2025

**VIA ECF**
Honorable Michael A. Hammer
United States District Court
Martin Luther King Building & U.S. Courthouse
50 Walnut Street
Newark, New Jersey 07101

Re: ***Nina Agdal v. Dillon Danis***, 23-CV-16873 (MCA) (MAH)

Dear Judge Hammer,

On behalf of Plaintiff Nina Agdal, we submit this letter pursuant to the Court's procedures governing discovery disputes. [D.E. 48, 68]. Plaintiff submits this letter in support of her request that Defendant be compelled to (1) assist with facilitating access to his dead cellular phone by providing his password, needed to continue with a forensic examination of the phone, and (2) produce materials responsive to Plaintiff's Second Set of Requests for Production of Documents (the "Requests"). Although the Court instructed the Parties to file joint letters for discovery disputes in which the Parties would set forth their respective positions, despite

**Sills Cummis & Gross**
A Professional Corporation

Honorable Michael A. Hammer
April 23, 2025
Page 2

Plaintiff's attempts, Defendant Dillon Danis did not respond to Plaintiff's effort to incorporate in

this letter his position on the issues set forth below.

**(1) The Password to Defendant's Dead Cellular Phone**

The relevant background is detailed in the Court's February 4, 2025 Order [D.E. 91]. In

summary, Defendant has claimed that the phone he used during the critical time period at issue

in this case—*i.e.*, the exclusive device he used to make the offending posts about Plaintiff—died

after he took it into the sauna. The Court ordered Defendant to turn the phone over to his

counsel to be provided to Plaintiff's counsel. [D.E. 68, 83]. Pursuant to that Order, the phone

was provided to Plaintiff's counsel, with the understanding that Plaintiff would arrange for an IT

specialist to conduct a forensic examination of the phone. The Parties agreed that, in the event

the IT specialist was able to access the phone to retrieve any data, Plaintiff would not review any

of that data until the Parties had conferred and agreed on a protocol for doing so.

In December 2024, Plaintiff asked that the Court order Defendant to incur the remaining

expenses associated with completing the forensic examination based on an initial assessment

from Plaintiff's IT specialist that the phone's condition resulted from an intentional effort to

render it inoperable. [D.E. 88] In February 2025, the Court denied that request without prejudice,

reasoning, in part, that Plaintiff was "put[ting] the proverbial cart before the horse," but that

Plaintiff was welcome to complete the examination and then bring an appropriate motion under

Rule 37, if warranted. [D.E. 91 at n.7]. Accordingly, Plaintiff's IT specialist proceeded with his

examination and now has advised that, while he has identified a potential workaround to the

**Sills Cummis & Gross**
A Professional Corporation

Honorable Michael A. Hammer
April 23, 2025
Page 3

damaged charging port on the phone, he needs the password to the phone to continue his

examination of whether and the extent to which the data on the phone is retrievable.

When Plaintiff asked Defendant for his password, he claimed he does not remember it—

even though, during the deposition regarding his discovery efforts, Defendant testified he already

had turned over his passwords to his counsel. *See* **Exhibit 1** (Deposition Excerpt of Dillon Danis,

dated October 8, 2024) at 123:4-11. And, when Plaintiff's counsel requested that Defendant

provide his old and/or commonly used passwords for the forensic expert to try, Defendant's

counsel responded by instead insisting the phone be sent back to him to access it.

Implicit in the Court's orders that Defendant's phone be turned over to Plaintiff to

arrange for a forensic examination was that Defendant would facilitate access to the phone for

purposes of that examination. Plaintiff asked Defendant to (i) engage a forensic expert to search

his phone or (ii) contribute to the costs Plaintiff is incurring to have it searched, but Defendant

refused. Defendant cannot be permitted to impede Plaintiff's efforts to do what Defendant should

have done. Besides, removing the phone from the expert's care and sending it back to Defendant

would be fruitless and would risk additional damage to the phone. The phone has not been

restored to working order such that Defendant simply can enter his password and then collect

whatever data is on the phone—that is what the specialist is trying to accomplish. Furthermore,

even if/when the specialist is provided the password(s) to assist with further forensic analysis,

additional steps may need to be taken to recover any data and determine what had caused the

damage to the phone initially, something Defendant and his counsel are not capable to handle.

## Sills Cummis & Gross
### A Professional Corporation

Honorable Michael A. Hammer
April 23, 2025
Page 4

Also, moving the phone from the expert's lab not only would interrupt his continued efforts to retrieve data from the phone, but could further compromise the phone's condition.

### (2) Plaintiff's Second Set of Requests for Production of Documents

On February 5, 2025, Plaintiff served Defendant with the Requests, which seek records relating to Defendant's dead cellular phone, such as information about what had happened to the phone and Defendant's data retention settings. *See* **Exhibit 2**. Defendant's deadline for responding to the Requests was March 5, 2025. Defendant failed to respond by that deadline. Since then, Plaintiff reached out twice to Defendant seeking responses to the Requests but, to date, Defendant still has not responded to the Requests nor provided an explanation for the significant delay. As such, any objections (other than as to privilege) have been waived. *See PEG Bandwidth PA, LLC v. Salsgiver, Inc.*, 2017 WL 2992219, *3 (W.D. Pa. July 13, 2017) (finding waiver where there was no response to RFPs and no good cause). Defendant's ongoing failure to produce responsive materials is yet again stymying Plaintiff's ability to move the case forward, and Plaintiff seeks an order compelling Defendant's production of responsive documents to the Requests without further delay.

Thank You for the Court's consideration of this matter.[1]

Respectfully submitted,

**SILLS CUMMIS & GROSS, P.C.**
/s/ Joseph B. Shumofsky
Joseph B. Shumofsky, Esq.

---

[1] Please note that, excluding the above letterhead, the content of this letter is within three double-spaced pages, per the Court's prior order.

**Sills Cummis & Gross**
A Professional Corporation

Honorable Michael A. Hammer
April 23, 2025
Page 5

**MARCUS NEIMAN**
**RASHBAUM & PINEIRO LLP**
/s/ Jeffrey A. Neiman
Jeffrey A. Neiman, Esq.
Jason L. Mays, Esq.

Encls.
cc:      Counsel for Defendant Dillon Danis (via ECF)

# Exhibit 1

Page 1

1            UNITED STATES DISTRICT COURT
              DISTRICT OF NEW JERSEY

2
                    Case No.: 2:2023cv16873

3
     NINA AGDAL,

4
          Plaintiff,              REMOTE VIDEOTAPED

5                                 DEPOSITION OF:
          vs.                     DILLON DANIS

6
     DILLON DANIS,

7
          Defendants.

8    _____

9        TRANSCRIPT of the stenographic notes of the

10   proceedings in the above-entitled matter, as

11   taken by and before RITA GARDNER, a Notary

12   Public and Certified Court Reporter of the State

13   of New Jersey, held REMOTELY VIA ZOOM, on

14   Tuesday, October 8, 2024, commencing at 10:05

15   a.m.

16

17

18

19

20

21

22

23

24

25

Page 2

```
1   A P P E A R A N C E S :
2   MARCUS NEIMAN & RASHBAUM
    By: JASON L. MAYS, ESQUIRE
3   And JEFFREY A. NEIMAN, ESQUIRE
    100 Southeast Third Avenue Suite 805
4   Fort Lauderdale, Florida 33394
    Jmays@mnrlawfirm.com
5   Attorneys for the Plaintiff
6   HARTMANN DOHERTY ROSA BERMAN & BULBULIA, LLC
    By: MARK A. BERMAN, ESQUIRE
7   433 Hackensack Avenue, Suite 1002
    Hackensack, New Jersey 07601
8   Mberman@hdrbb.com
    Attorneys for the Defendant
9   A L S O  P R E S E N T :
10  VERITEXT LEGAL SOLUTIONS
    By: ZEF COTA, VIDEOGRAPHER
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

Page 4

```
1
2           INDEX TO EXHIBITS CONT'D
3   EXHIBIT      DESCRIPTION          PAGE
4   No. 11      An order entered on       135
                September 11, 2024
5
    (Exhibits were not provided to the reporter.)
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

Page 3

```
1           INDEX TO WITNESS
2   WITNESS                        PAGE
3   DILLON DANIS
4   By Mr. Mays            6
5
6           INDEX TO EXHIBITS
7   EXHIBIT      DESCRIPTION        PAGE
8   No. 1    A document entitled:    49
             Notice of Commencement
9            of Litigation, dated
             September 6, 2023
10
    No. 2    A document entitled:    53
11           Retainer Agreement, dated
             September 10, 2023
12
    No. 3    Responses to Plaintiff's  71
13           First Set of Interrogatories
14  No. 4    Amended Responses to    90
             Interrogatories, dated
15           August 16, 2024
16  No. 5    Defendant's Responses to  96
             Plaintiff's First Request to
17           Defendant for the Production of
             Documents
18
    No. 6    An Order, dated April   103
19           25, 2024
20  No. 7    An Order to Show Cause,  105
             dated May 31, 2024
21
    No. 8    A transcript of a hearing, 110
22           dated July 11, 2024
23  No. 9    A Certification, dated   126
             August 16, 2024
24
    No. 10   An order entered on     133
25           September 3, 2024
```

Page 5

```
1           THE VIDEOGRAPHER:  Good morning.  We
2   are going on the record at 10:05 a.m., Eastern
3   Daylight Time, on October 8, 2024.  Please note
4   that this deposition is being conducted
5   virtually.
6           Quality of recording depends on
7   quality of camera and internet connection of
8   participants.  What is seen and from the witness
9   and heard on screen is what will be recorded.
10  Audio and video recording will continue to take
11  place unless all parties agree to go off the
12  record.
13          This is Media Unit 1 of the
14  video-recorded deposition of Dillon Danis, taken
15  by counsel, in the matter of Nina Agdal versus
16  Dillon Danis, filed in the U.S. District Court
17  for the District of New Jersey.  Index No.
18  2:2023cv16873.
19          This deposition is being conducted
20  remotely using virtual technology.  My name is
21  Zef Cota, representing Veritext, and I am the
22  videographer.  The court reporter is Rita Gardner
23  from the firm Veritext.
24          I am not related to any party in
25  this action, nor am I financially interested the
```

2 (Pages 2 - 5)

DILLON DANIS

**Page 122**

1  you and said, "Ha, ha, that is funny, what is
2  going on, the post that you are making about
3  Ms. Agdal," to you, that wouldn't be responsive,
4  right?
5      A.   Right. I mean, I don't know. I
6  probably wouldn't even answer at that time. You
7  know. People text you, what is going on in the
8  world. Who knows. It has nothing to do with
9  what is going on here.
10      Q.   Right. But as we were looking
11  through the interrogatories and the request for
12  production, you pointed out to me that you
13  interpreted some of the requests that we were
14  looking at to relate specifically to the nude
15  photograph at issue, right?
16      A.   Yes.
17      Q.   Okay. And on that basis, you
18  answered the questions in a specific way, right?
19      A.   Yes.
20      Q.   Okay. And so when you tell me what
21  you -- what text messages you had during the time
22  period of August 2023 through October 2023, you
23  are basically doing the same thing, right?
24      A.   What do you mean by that?
25      Q.   Right. So you are -- you've made a

**Page 123**

1  determination that certain categories of texts
2  that relate to Ms. Agdal aren't relevant to the
3  case.
4      A.   I am not determining anything. I
5  gave my phone. I gave my old phone. Nothing
6  else I can do. I am not determining anything.
7  But what I can say doesn't really matter. It is
8  up to the judge and my lawyer. I gave up every
9  device I use, every platform. I gave my password
10  for everything. I even gave transcripts. So I
11  did everything on my part.
12      Q.   Well, so you say, right, because you
13  also said that you didn't preserve your text
14  messages, right?
15      A.   I didn't -- I mean how am I going --
16  hold the phone and save the text messages? There
17  is nothing I can do there. The phone breaks, the
18  phone breaks. I provided the phone. You guys
19  have it, and I provided everything that you guys
20  asked. You know, I guess what I think is not
21  relevant. It doesn't really matter if my lawyer
22  is going through my phone and that is it. I
23  really have no say in anything the judge --
24  whatever the judge says. There is nothing that I
25  haven't provided.

**Page 124**

1      That is why in the beginning, when I
2  thought that jokes didn't matter, and my lawyer
3  said it didn't, he said he had it in there. We
4  haven't lied about anything. We haven't hid
5  anything. We have gave everything that we have.
6  Even the old phone. So your question that you
7  keep circling has nothing to do with anything.
8      Q.   Well, when I asked you about the
9  interrogatories, you pointed out that the reason
10  you didn't initially disclose Mr. Lord is because
11  he was just Photoshopping content.
12      And the reason you didn't initially
13  disclose Mr. Hinchcliffe is because he was just
14  making jokes, right?
15      A.   Yes.
16      Q.   So is it possible that you had text
17  messages that also were Photoshopping or making
18  jokes during this time period?
19      A.   No. I mean, I say no because I know
20  what I posted.
21      Q.   Okay. But you say no, but in fact,
22  Mr. Lord produced text messages with you from
23  this time period, right?
24      A.   Yes, but the Photoshop is what I am
25  saying. And we -- we provided that once my

**Page 125**

1  lawyer told me, "Oh, this is part of what it is."
2  So...
3      Q.   Well, you didn't --
4      A.   It doesn't matter what I say --
5      Q.   Say it again.
6      A.   It doesn't matter what I say, you
7  guys have access to everything. So...
8      Q.   Mr. Danis, how are you saying we
9  have access to everything --
10      A.   The judge --
11      Q.   -- text messages from the relevant
12  time period?
13      A.   There is nothing I can do about the
14  phone broken. I brought the phone. I mean, I
15  brought it in, and that is it. That is what the
16  judge wanted. If you guys want to go to AT&T
17  mobile and get all my text messages, I have
18  nothing to hide. So. I have done everything I
19  have been asked.
20      Q.   Do you know if AT&T has access to
21  all of your text messages?
22      A.   I have no idea. I mean, probably.
23  I mean -- there is only a couple months that we
24  didn't produce out of everything. So, it
25  wouldn't be hard.

32 (Pages 122 - 125)

# Exhibit 2

Sills Cummis & Gross P.C.
Joseph B. Shumofsky
Justin M. Schettino
One Riverfront Plaza
Newark, New Jersey 07102
(973) 643-7000

Marcus Neiman Rashbaum & Pineiro LLP
Jeffrey A. Neiman (admitted *pro hac vice*)
Jason L. Mays (admitted *pro hac vice*)
One Financial Plaza
100 SE 3rd Ave., Suite 805
Fort Lauderdale, Florida 33394
(954) 462-1200

*Attorneys for Plaintiff Nina Agdal*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| NINA AGDAL,<br><br>         Plaintiff,<br><br>v.<br><br>DILLON DANIS,<br><br>         Defendant. | Case No.: 2:23-CV-16873-MCA-MAH<br><br>**PLAINTIFF'S SECOND REQUEST TO DEFENDANT FOR THE PRODUCTION OF DOCUMENTS** |

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure (the "Federal Rules") and Rules 26.1 and 34.1 of the Local Civil Rules, Plaintiff Nina Agdal ("Plaintiff") requests that Defendant Dillon Danis ("Defendant") produce for inspection and copying the documents and things requested below at the offices of Sills Cummis & Gross P.C., One Riverfront Plaza, Newark, New Jersey 07102. In responding, please produce and permit the inspection and copying of each of the documents requested below within the applicable timeframe under the Federal Rules or as ordered by the Court. A written response to the

1

Requests also is required pursuant to Rule 34 of the Federal Rules. These Requests are continuing in nature, so as to require supplemental production should Defendant or his counsel obtain further or supplemental documents and information after the time that the responses and documents are provided, as required by Rule 26(e) of the Federal Rules.

## DEFINITIONS

Unless the terms of a particular Request indicate otherwise, the following definitions are applicable throughout these Requests and are incorporated into each specific Request.

1.  "Wireless Carrier" refers to your wireless carrier, AT&T, as you testified to during your deposition on October 8, 2024.

2.  "All" is used in the broadest sense possible and means, without limitation, every and any document, communication, or other thing known to You or that You could discover by reasonably diligent efforts. When used in reference to persons, "all" means, without limitation, every and any persons whose identities are known to You or that You could discover by reasonably diligent efforts.

3.  "Communication" is used in the broadest possible sense and means, without limitation, any transmittal or exchange of words, thoughts or information (in the form of facts, ideas, inquiries or otherwise), whether orally or in writing, and whether delivered by voice, telephone, post, electronic mail, or otherwise, and shall include, without limitation, any discussion, conversation, meeting, conference, correspondence, letter, facsimile, telex, telegram, text message, mailgram, memorandum, notes, telephone call, telephone or voicemail message or recording, electronic or e-mail transmission, SMS or MMS, computer generated or electronically stored information or any other forms or mediums of transmittal of information of any kind.

4.      "Content" means any images, photographs, videos, other audio or visual depictions or recordings, or information contained in any form of communication, including in-person interactions, letters, telephone calls, text messages, emails, video conferencing, radio postings or messages, social media postings or messages, and online messaging platforms.

5.      "Correspondence" means any letter, telegram, telex, TWX, facsimile, notice, message, test message, instant message, memorandum, e-mail, or any other form of electronic or non-electronic communication, or notes of a communication, and all attachments thereto or enclosures or exhibits included therewith.

6.      "Document" has the broadest meaning accorded that term by Fed. R. Civ. P. 34(a) and includes, but is not limited to, all of the items defined in Fed. R. Evid. 1001. The term shall include, but not be limited to, all written, Electronically Stored Information, phonic, graphic, and recorded matter of every type and description and every tangible thing that is or has been in Your possession, custody, or control, to which You have access, or of which You have knowledge. Document(s) shall also include, but shall not be limited to, the following items, whether printed or recorded or reproduced by hand: agreements, contracts, leases, communications (including intra company communications), electronic mail, data from Personal Digital Assistants (including Palm Pilots and other PDA's and Smart Phones), correspondence, faxes, telegrams, cables, telexes, teletype messages, memoranda, records, books, diaries, notebooks, calendars (paper, electronic, and otherwise), telephone and other logs, telephone and other bills, voicemail transcriptions, forecasts, statistical statements, accounts, invoices, purchase orders, receipts, billing records, tapes, expense vouchers, minutes, summaries, and other records of meetings, conferences, negotiations, conversations, investigations, and interviews, sales brochures and literature, advertisements, price lists, trade letters, press releases, stenographic, handwritten, and

3

any other notes, projections, working papers, checks (front and back), check stubs and receipts, models, surveys, devices, pictures, photographs, films, computer records, data compilations, and voice and video recordings. Document(s) shall not be limited in any way as to the form of storage (such as paper, microfiche, magnetic tape, magnetic disk, CD ROM, DVD, optical disk, or other electronic storage device). A draft or non-identical copy is a separate document within the meaning of this term.

7.     "Danis," "Defendant," "You," or "Your" means Defendant Dillon Danis and any of his present or former agents, partners, attorneys, representatives, and any other persons or entities (i) over whom he has or had control, (ii) who have or had control over him, or (iii) who act or acted on his behalf.

8.     "Electronically Stored Information" or "ESI" means any information, including but not limited to, e-mails, documents, files, metadata, writings, drawings, designs, graphs, charts, photographs, sound recordings, images, other data or data compilations, etc., stored in any electronic medium including but not limited to computers, laptops, servers, cell phones, PDAs, blackberry, cell phone or other similar device, from which information can be obtained or translated into a reasonably usable form.

9.     "Identify" as used herein means:

    **(a)**     with respect to a document, to state:

        (i) the type of document, whether a letter, memorandum, report, agreement, recording notation etc.;

        (ii) any caption, heading and/or date shown on the face of the document;

        (iii) the identity of each individual who originated, initialed, signed, authored, prepared or received (and if the same was done on behalf of any

4

person, the identity of each such person), or is in any way referred to in the document;

(iv) the number of pages if written or the approximate size or length if recorded; and

(v) the general subject matter of the document.

**(b)**  with respect to an individual, to state his or her:

(i) full name;

(ii) occupation and employer, if any;

(iii) business and home address; and

(iv) business and home telephone number.

**(c)**  with respect to an entity, to state:

(i) its full name;

(ii) the jurisdiction under whose laws it was organized;

(iii) its principal office address and telephone number; and

(iv) its principal officer or member known to You.

**(d)**  with respect to an oral or written communication, to state:

(i) the persons participating in and/or present during any part of the conversation or discussion;

(ii) the date of the communication;

(iii) the place of the communication;

(iv) as completely as possible, what each person said during such conversation or discussion; and

> > (v) whether the communication was reduced to writing, and if so, identify each document and present custodian thereof.

10.     "Including" means "including but not limited to and without limitation"; and, "includes" means "includes but is not limited to and without limitation."

11.     "Lawsuit" means the above-captioned action, Case No. 2:23-CV-16873-MCA-MAH, currently pending in the United States District Court for the District of New Jersey.

12.     "Person" means all natural persons and entities, including individuals, proprietorships, companies, partnerships, joint ventures, corporations, trusts and estates, all other legal entities, and all members, directors, officers, employees, accountants, investigators, attorneys, or other representatives or agents thereof.

13.     "Refer to" or "Referring to" or "Relate to" or "Relating to," shall mean concerning, discussing, pertaining to, mentioning, commenting on, connected with, discussing, describing, analyzing, explaining, showing, reflecting, pertaining to, evidencing, supporting, dealing with, comprising, consisting of, containing, resulting from, recording or having any logical or factual connection whatsoever with that particular subject matter, in whole or in part, either directly or indirectly.

14.     The singular shall be deemed to include the plural and vice versa, to make the request inclusive rather than exclusive. A masculine, feminine, or neuter pronoun shall not be construed to exclude the other genders. The use of capital letters, lower case letters or quotation marks in these requests shall not be construed to limit the scope of any specific request contained herein. The word "and" shall be deemed to include the disjunctive "or" and vice versa, in the broadest possible sense. The past tense includes the present tense and vice versa.

6

## INSTRUCTIONS

1.      In responding to these requests, You are to produce all responsive documents in Your possession, custody, or control, or in the possession, custody, or control of Your representatives and agents.

2.      Documents should be produced in the form in which they are kept in the ordinary course of business or organized and labeled to indicate the request to which the documents are responsive. In producing responsive documents, You are to produce them in their original file folders, if any, or in lieu thereof, attach to the set of documents produced from a given file a photocopy of all written or printed material on the original file folder. In addition, the documents shall be produced in the same sequence as they are contained or found in the original file folder. Under no circumstances shall documents from any file folder be commingled with documents from any other file folder. Any document that is attached by staple, clip or otherwise to a document requested herein shall also be produced (attached in the same manner as the original) regardless of whether the production of that document is otherwise requested herein. Documents attached to each other shall not be separated.

3.      Electronically stored information must be produced in accordance with Fed. R. Civ. P. 34. If a request does not specify a form for producing electronically stored information, You must produce it in the form in which it is ordinarily maintained unless accessing the information in such form requires proprietary software not reasonably available to You. In those cases, the material must be produced in a mutually agreed form that is reasonably usable.

7

4.      Should You have a good faith objection to any discovery request or part thereof, You shall state the specific nature of the objection and whether it applies to the entire discovery request or to specific parts of a discovery request. If the objection relates to only part or parts of a discovery request, then You shall identify the objectionable part or parts and identify or produce any and all documents responsive to the remaining parts.

5.      In the event that any document or portion of any document within the scope of these requests is withheld from production upon a claim of privilege or work product, with respect to each document You are required to provide a privilege log in conformity with Rule 26(b)(5) of the Federal Rules of Civil Procedure and Rule 34.1 of the Local Civil Rules, identifying each such document together with the following information:

(a)      the type of document (e.g., "letter," "memorandum");

(b)      the date of the document;

(c)      the identity of each document's author, writer, sender, or initiator;

(d)      the identity of each document's recipient, addressee, or person for whom it was intended;

(e)      where not apparent, the relationship of the author, writer, sender, initiator, addressee or any other recipient with each other;

(f)      the date of creation or transmittal indicated on each document, or an estimate of that date, indicated as such, if no date appears on the document;

(g)      the general subject matter as described on each document, or, if no such description appears, then some other description sufficient to identify the document; and

(h)    the basis for the asserted privilege or claimed grounds for limitation of discovery (*e.g.*, "attorney client privilege").

6.    Where a request seeks the identification or production of documents or things not within Your actual or constructive possession, custody or control, or knowledge, You shall so state and shall answer the request to the extent of Your knowledge or belief based on the best information presently available. If You have knowledge or a belief as to other Person(s) having such possession, custody or control, or knowledge, You shall so identify, to the extent known and based on the best information presently available, such Person(s) together with a brief summary of the nature of the document or thing believed to be known to such persons.

7.    With respect to each document or thing otherwise responsive to any discovery request that has been, but is no longer in Your possession, custody or control, or has been lost or destroyed since its preparation or receipt, identify, to the extent possible, the document or thing that has been lost or destroyed, state the request to which it would be responsive, and set forth the following information with respect to each document:

(a)    the title of the document and the nature and subject matter of its contents;

(b)    describe with particularity the circumstances under which the document or thing was lost or destroyed, including but not limited to the identity of the Person(s) responsible for the loss or destruction of each document or thing and all files which contained, the document or thing;

(c)    the identity of the Person(s) most knowledgeable about the content of the document or nature of the thing;

9

(d)    the identity(ies) of the person(s) who prepared or authored the document, and, if applicable, the persons to whom the document was sent or was intended to be sent;

(e)    the date on which the document was created, prepared, or transmitted;

(f)    the date on which the document was lost, destroyed or otherwise disposed of, the manner and conditions of and reasons for such destruction or other disposition and the persons requesting and performing the destruction or other disposition; and

(g)    the present or last known location of the document, including the name, address and telephone number of each person believed to have possession of such document.

8.    This Request for Production shall be deemed to be continuing so as to require supplemental responses and documents if further or different information and/or additional documents and things are obtained, as required by Federal Rule of Civil Procedure 26(e).

9.    Unless otherwise specified, the time period covered by these Requests is August 1, 2023 to the present.

10

## REQUESTS FOR PRODUCTION

1.     All records that reflect Your internet searches and browsing history pertaining to Agdal from August 1, 2023, to October 14, 2023, including but not limited to any such records that you are able to obtain from your Wireless Carrier.

2.     All records that You are able to obtain from Your Wireless Carrier that reflect or relate to Your text message communications pertaining to Agdal from August 1, 2023 to October 14, 2023.

3.     Any documents and communications that relate to the cellular phone that you claim died, and your steps to repair or replace that phone, including but not limited to:

   (a) Documents sufficient to reflect the timing of when the phone died (month/year),

   (b) Documents and communications that discuss how Your phone died, and

   (c) Documents and communications thar relate to Your visit(s) to any Best Buy or Apple Store in an attempt to have the phone repaired.

4.     Documents sufficient to identify the data retention settings on Your phone during the Relevant Time Period, including but not limited to your settings relating to the preservation of text messages.

5.     Any of the following data that is obtained from conducting an Apple Data Request, as explained in the instructions attached as Exhibit A:

   (a) Communications relating to Agdal or Your posts about Agdal,

   (b) Your internet search and/or browsing history pertaining to Agdal,

   (c) Media (i.e., photos, memes, videos, etc.) that You downloaded pertaining to Agdal,

   (d) Information relating to when the phone that you allege died was last used or accessed,

11

(e) Information relating to when that phone was last backed up to the Cloud, and whether text messages were among the data backed up,

(f) Information relating to Your Apple Store visit(s) and/or Apple support history and repair requests.

Dated: February 5, 2025

Respectfully submitted,

**MARCUS NEIMAN RASHBAUM & PINEIRO LLP**

*/s/ Jason L. Mays*

**Jeffrey A. Neiman**
Florida Bar. No. 544469
jneiman@mnrlawfirm.com
*Admitted Pro Hac Vice*
**Kathryn Meyers**
Florida Bar No. 711152
kmeyers@mnrlawfirm.com
*Admitted Pro Hac Vice*
**Jason L. Mays**
Florida Bar. No. 106495
jmays@mnrlawfirm.com
*Admitted Pro Hac Vice*

100 Southeast Third Avenue, Suite 805
Fort Lauderdale, FL 33394
Telephone: (954) 462-1200
Facsimile: (954) 688-2492

*Counsel for Plaintiff Nina Agdal*

**SILLS CUMMINS & GROSS P.C.**

**Joseph B. Shumofsky**
New Jersey Bar No. 045211998
jshumofsky@sillscummis.com
**Justin M. Schettino**
New Jersey Bar No. 401192022
jschettino@sillscummis.com

12

One Riverfront Plaza
Newark, NJ 07102
Telephone: (973) 643-7000
Facsimile: (973) 643-6500

# EXHIBIT A

# Apple Data Request Instructions

1) From your browser, go to privacy.apple.com.

2) Enter the email address linked to your AppleID, and your AppleID password.



3) You will receive a two-factor authentication prompt on your device or alternate device (laptop/ipad) to verify access.

4) Once access is granted the user will see the following options. Select, "Get a Copy of your Data."



5) As referenced below, check the blue box on the right side of the following options.
   a) App install activity
   b) Apple Media Services Information
   c) Apple ID account and device information
   d) Apple.com and Apple Store activity
   e) AppleCare support history, repair requests, and more
   f) Other data



6) Once the correct boxes are checked, scroll to the bottom of the page and select "Continue."



7) Apple will then prompt the user to select a "Maximum File Size." The default size should be set to 1GB. Do not make any changes. Select "Complete request."



8) The user will receive an email from Apple when the data is ready for download. This could take from 1-5 days typically.

9) Once the email notification is received, the user can download the data by clicking the featured button within the message, then share it with relevant parties.