Joseph B. Shumofsky
SILLS CUMMIS & GROSS P.C.
One Riverfront Plaza
Newark, New Jersey 07102
(973) 643-7000

Jeffrey A. Neiman
Jason L. Mays
NEIMAN MAYS FLOCH & ALMEIDA PLLC
100 SE 3rd Avenue, Suite 805
Ft. Lauderdale, Florida 33394
(305) 434-4941

*Attorneys for Plaintiff Nina Agdal*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| NINA AGDAL,<br><br>                    Plaintiff,<br><br>v.<br><br>DILLON DANIS,<br><br>                    Defendant. | Civil Action No. 2:23-cv-16873-MCA-MAH<br><br>Hon. Madeline Cox Arleo, U.S.D.J.<br>Hon. Michael A. Hammer, U.S.M.J.<br><br>**DECLARATION OF JASON L. MAYS,<br>ESQ. IN SUPPORT OF PLAINTIFF NINA<br>AGDAL'S MOTION FOR LEAVE TO FILE<br>THE THIRD AMENDED COMPLAINT** |

JASON L. MAYS, under penalty of perjury, declares as follows:

1.      I am an attorney at law who is licensed to practice in the State of Florida, and a

partner at the South Florida law firm Neiman Mays Floch & Almeida PLLC.  I have been

admitted *pro hac vice* in the above-captioned matter as one of the attorneys representing Plaintiff

Nina Agdal ("Plaintiff").  I submit this Declaration in support of Plaintiff's Motion for Leave to

File the Third Amended Complaint.

2.      On November 16, 2023, Plaintiff issued initial document demands to Defendant

Dillon Danis ("Defendant").  *See* D.E. 53-54.  Considering the nature of the allegations,

Plaintiff's demands primarily sought documents and communications related to Defendant's

social media account, including his X account from which he conducted his harassment campaign against Plaintiff.

3.    Defendant ignored his discovery obligations entirely by failing to produce any responsive materials, which necessitated Court intervention resulting in Court Orders and hearings. *See, e.g.*, D.E. 54, 57, 63. With respect to Defendant's X accounts and his corresponding posts, Defendant never produced any individual responsive communications, texts, direct messages, or posts, instead simply providing a copy (or "image") of Defendant's entire X account to Plaintiff for Plaintiff to sift through herself.

4.    On June 11, 2025, Defendant's counsel produced to Plaintiff wholesale a download of Defendant's accounts that it had received from X. Upon review of that data, Plaintiff quickly realized that – in addition to the production being an extraordinarily large and cumbersome data dump – the format of the X-archived data rendered it virtually unintelligible and unusable. The direct messages, alone, comprised more than 100,000 pages, and Plaintiff's discovery vendor advised that, because of the format of the production, it was impossible to cull and/or organize the information in any useful or manageable way (*e.g.*, by date). Additionally, the direct messages did not identify the user with whom Defendant was communicating, other than by a unique, X-assigned user identification number, thereby omitting key information.

5.    An Order to Show Cause ("OTSC") hearing was then held on July 11, 2024 given Defendant's failure to comply with his discovery obligations, and the X data was among the topics addressed at that hearing. Attached as *Exhibit A* is a true and correct copy of an excerpt of the transcript of the July 11, 2024 OTSC hearing. At that hearing, defense counsel acknowledged that the format of the X production made it "very difficult to interpret" and that it would "take a lifetime to filter through" Defendant's direct messages. Ex. A at 14:19-20; 15:15-17.

2

6.      Pursuant to the Court's suggestion, on August 14, 2024, defense counsel produced Defendant's X data in another format, but the subsequent production—although somewhat more reader-friendly—did not resolve all of the technological issues with the underlying data. The image received operates in a limited and technologically challenging fashion, making any review difficult and painstaking. For example, all identifiers – including the names and profile pictures of users – are removed, thereby anonymizing all users who sent messages to or received messages from Defendant. Moreover, the data does not maintain Defendant's messages in chronological order; instead, they are organized by conversation thread and are listed from more recently active to least recently active. Plaintiff encountered other technological issues that further complicated the review of the X account information, including a (i) severely limited search functionality; (ii) no download function (i.e., the messages can only be reviewed on the actual image); and (iii) a system error that results in the system automatically scrolling forward to the most recent message at random intervals, causing any reviewer to regularly lose their place and have to scroll through often lengthy messages strings to pick up where they left off.

7.      Plaintiff spent thousands of dollars to hire an outside contract attorney to review the messages. Because of the breadth of the data contained in the X image and the challenges described above that hindered the ability to search that information, it was extremely difficult and time consuming to identify responsive information. Of course, had Defendant reviewed his own X accounts to identify the responsive materials, any delay in identifying relevant discovery could have been avoided. Instead, the burden of combing through thousands of direct messages, without the benefit of any traditional or helpful search function, was left to Plaintiff.

8.      Recently, in early August 2025, Plaintiff uncovered additional communications on the X image that were part of Defendant's same harassment campaign against Plaintiff, which form the basis for the proposed claims and which further advance Plaintiff's current claims

3

against Defendant.  Specifically, buried in the voluminous X messages – estimated to be more than 100,000 – Plaintiff discovered communications showing that (i) on August 11, 2023, Defendant sent the sexually explicit photograph at issue to yet another X user with several million followers in a separate message and even requested that user to repost the photo, and (ii) on September 3, 2023, and again on October 18, 2023, despite being informed of its falsity, Defendant reposted a video of an influencer indicating the influencer had a sexual encounter with Plaintiff in exchange for drugs.

9.      With this context, I certify that Plaintiff is moving for leave to file her Third Amended Complaint promptly after discovery of this information.

I certify that the foregoing statements made by me are true and correct.  I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.


By: _____
                 Jason L. Mays

Dated: September 19, 2023